A. G. BEATTY, Appellee, v. J. E. COOK, Appellant.

**HOMESTEAD:** Judgment as Lien on Pension-Bought Homestead. A judgment *never* becomes a lien on the pension-bought homestead of the judgment defendant (Sec. 4010, Code, 1897), nor has the judgment plaintiff any right, after the death of the judgment defendant, to an award of execution against the homestead property on petition therefor against the executor, heirs, and devisees. (Sec. 4036, Code, 1897.)

**HOMESTEAD:** Unauthorized but Uncontested Sale on Execution— Priorities. Judgment creditors of the owner of a pension-bought homestead, who, after the death of the owner, and without contest on the part of the executor, heirs, or devisees, secure that to which they are not legally entitled, to wit, awards of execution against the homestead property, and obtain separate sheriff's deeds thereto, will, irrespective of diligence in obtaining deeds, be deemed to own the property jointly, in proportion to the amounts of their respective judgments.

*Appeal from Buchanan District Court.*—F. C. PLATT, Judge.

NOVEMBER 22, 1921.

ACTION in equity to quiet title and determine the priority of judgment creditors in relation to the enforcement of their claimed liens against a pension-money homestead. The opinion states the facts. The trial court entered a decree in favor of the plaintiff. Defendant appeals.—*Reversed and remanded.*

*Roy A. Cook,* for appellant.

*M. W. Harmon,* for appellee.

DE GRAFF, J.—To apply or appreciate the law of this case it is quite necessary to understand its chronology. It is a case of novel impression. The record discloses the following salient facts:

1. HOMESTEAD: judgment as lien on pension-bought homestead.

Jane Wardell purchased a homestead at Independence, Iowa with government pension money January 22, 1900. She died April 1st, 1904.

On May 24, 1898 a judgment was entered in favor of Maggie Gorman in the district court of Buchanan County, Iowa for $178.77 against Jane Wardell.

Subsequently to the death of Jane Wardell a petition for execution was filed by Maggie Gorman under the provisions of Code Section 4036 against the administrator of the estate of Jane Wardell and her heirs at law, and a decree was entered February 20, 1906 awarding execution. The real estate was sold to the defendant May 26, 1906 and a sheriff's deed issued and recorded June 3rd 1907.

On March the 3rd and March the 5th 1900 respectively two judgments were entered in favor of R. F. Stewart against Jane Wardell for $56.62 and $33.65 with costs. The creditor Stewart assigned these judgments to the plaintiff Beatty. On April 26, 1904 plaintiff filed a petition for execution against the administrator and heirs at law of Jane Wardell and a decree was entered November 1st 1904 awarding execution on said judgments. An appeal to the Supreme Court of Iowa was taken by defendants in said suit and on November 18, 1905 said judgment was affirmed. See *Beatty v. Wardell,* 130 Iowa 651. On July 9, 1906 the premises were sold on execution to the plaintiff and a sheriff's deed was issued to plaintiff and recorded July 8, 1907.

The trial court in determining the equities of the cause to be with plaintiff stressed the fact that the defendant is estopped from asserting a claimed right in the real estate purchased by him at execution sale because his law firm acted as attorneys for the heirs at law in a contest and on appeal between them and the plaintiff.

There is no merit in this finding and it is in no sense controlling as to the issues involved. No conduct of the defendant as attorney for the heirs of the judgment debtor misled or prejudiced the plaintiff in any manner, which is necessary to predicate an estoppel.

The primary question presented by this appeal is: Does the statutory exemption as expressed in Code Section 4010 merely preclude a judgment creditor from enforcing by execution the lien of his judgment or does the exemption preclude a lien from attaching under such judgment against the homestead of the pensioner?

Before discussing the intent and purpose of this statute it is important that we have in mind the origin and nature of a judgment lien. Such a lien is the creature of statute. It does not arise by virtue of the judgment. It does arise only by operation of law. It is purely passive, but creates a right to take with a preference over certain adverse interests. The lien is an incident of the recorded judgment necessarily, but the judgment is not dependent upon it. Being a strict legal right or advantage, it must stand or fall by the statute which gives it.

The general statute providing for judgment liens has for its primary object the payment of judgment debts. It is a statutory security and the lien created thereby is a vested legal right. It can be lost only by the act or consent of its beneficiary. This security is evidenced by a lien running with the land, giving to the creditor the right to have the debtor's lands applied to the satisfaction of the judgment by execution and sale. Ordinarily this statutory right accrues upon the entry of judgment, and consequently the lien is an incident of the judgment. It exists or does not exist according to statutory intendment. At common law a judgment *per se* created no lien on real estate nor could the lands of the judgment debtor be sold on execution. As the social and commercial life of the English

people changed and became more complex it became necessary to enact a statute giving to the creditor the security by way of a lien as known to the modern law. This first finds expression in the statute of Westminster 2, 13 Edw. 1., commonly known as the statute *de mercatoribus*. This authorized the judgment creditor to sue out the writ of elegit, which subjected the goods of the debtor to execution and sale, and if insufficient for the purpose, the creditor was entitled to a moiety of the freehold estate of the debtor. It will be observed that it was the writ, and not the judgment, that created the lien.

Our statute makes judgments of certain courts liens upon the real estate owned by the judgment defendant at the time of their rendition. Code Section 3801. This statute, however, contemplates and intends that liens shall be created and shall attach only upon nonexempt real estate of the debtor.

We now turn to the provisions of the Code which primarily determine the issues of the case at bar. Section 4009 reads:

"All money received by any person, a resident of the state, as a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not."

Code Section 4010 reads:

"The homestead of every such pensioner, whether the head of a family or not, purchased and paid for with any such pension money, or the proceeds or accumulations thereof, shall also be exempt; and such exemption shall apply to debts of such pensioner contracted prior to the purchase of the homestead."

It is quite apparent that a judgment shall not be enforced by execution, levy, and sale during the life of the pensioner, but does a judgment against a pensioner within the purview of this statute create a lien, dormant or otherwise? In construing a statute we must never lose sight of its object and intent. A pension is a gratuity from the government, and it is clearly the legislative intent to protect that gratuity in whatever form it may exist. If a pension so received is invested by the pensioner in a store, homestead or vacant lot, it is contemplated that such property may be sold by the purchaser and the proceeds thereof

reinvested without let or hinder on the part of anyone. This clearly negatives the notion of a lien. The language of the enacting clause of this legislation supports this view. It reads:

"An Act to Exempt from Judicial Sale, the Pension Money Paid to any Person by the United States Government, and Certain of the Proceeds and Accumulations thereof." Chapter 23, Acts of the Twentieth General Assembly.

Nor may it be said that it is a dormant or suspended lien for it must attach, if at all, during the life of the pensioner. Upon his death this exempt realty passes *eo instanti* to his heirs. Title by descent is not held in abeyance for any purpose, and although there is nothing in the statute which declares that the pension-homestead shall be exempt in the hands of the heirs, it descends nevertheless to them without any liens by virtue of judgments entered against the pensioner during his life.

It is contended, however, that by reason of the action taken by the judgment creditors under the provisions of Code Section 4036 that certain rights were created and by reason thereof this court must determine the priority of those rights as between the judgment creditors-plaintiff and defendant.

Code Section 4036 provides:

"When a judgment has been obtained against a decedent in his lifetime, the plaintiff may file his petition in the office of the clerk of the court where the judgment is rendered, against the executor, the heirs and devisees of real estate, if such there be, setting forth the facts, and that there is real estate of the deceased, describing its location and extent, and praying the court to award execution against the same."

This statute deals with judgments that create liens. If A sues B, and a judgment is entered against B, and A fails for any reason to have execution, levy and sale of the nonexempt real estate of B before B's death, under the provisions of Section 4036, he may proceed by filing a petition against the executor or administrator and heirs and devisees of B, and upon a proper showing the court will award an execution. This is necessary for the reason that the heirs and other parties named have not had their day in court.

A judgment creditor under the lien statute (Code Section 3801) has a vested property right by virtue of a lien on the real

estate of a defendant-debtor, and Section 4036 provides that the statutory security thus given may be enforced against those who took title as heirs upon the death of the ancestor.

In the instant case, however, the judgment-creditors (plaintiff and defendant) possessed no vested rights in the homestead of the pensioner during her lifetime, as no liens attached by virtue of the judgments during her life. Nor did they attach upon her death. Therefore as to exempt property of the class in question, the judgments entered gave the creditors no superior or preferred rights as between themselves or as to other creditors in the event there were such. All creditors, whether judgment or otherwise, upon the death of the pensioner stand on the same footing as to the pension-homestead and no priority is recognized. It is the duty of all in order to enforce their claims to file the same in probate, have their claims established in conformity to law, and if the estate both personal and real is not sufficient to pay in full, their claims will be prorated unless some are preferred as defined by law. This being the true situation as between plaintiff and defendant we cannot under the circumstances recognize the rule of superior diligence so that one may be entitled to preference. They are entitled to share *pari passu*.

2. HOMESTEAD: unauthorized but uncontested sale on execution: priorities.

We are facing a condition not a theory at this time as executions were awarded on the petitions of plaintiff and defendant respectively, levies and sales were made thereunder, and sheriff's deeds were issued to the purchasers-plaintiff and defendant. The awarding of the executions aforesaid should have been denied and petitions dismissed. Having been awarded and no appeal taken involving the question decided in this opinion there was an adjudication as to the method of procedure under Code Section 4036. Since neither party hereto was an adverse party in the original actions prosecuted to secure the awarding of an execution, neither is bound by the other's decree. This appeal seeks to determine the priority, if any, of one creditor over the other. No priority being recognized we must proceed upon the principle that equity considers that done which ought to be done. In equity these creditors-plaintiff and defendant-may be considered as tenants in common, and each may be con-

sidered a constructive trustee for the other. The trial court could have properly had the real estate in controversy appraised, appointed a referee to affect a sale thereof, and after paying the costs of suit, prorated, if necessary, the proceeds of the sale.

It is therefore ordered that this cause be remanded and that a decree be entered establishing the interest of each party in the title to the real estate in question in proportion to their respective claims with interest and one half of the costs and accruing costs to be taxed to each. It is further ordered that if the form of decree to be entered cannot be agreed upon by the parties to this action, upon motion in this court by either party, the form of decree will be determined and entered accordingly. Wherefore this cause is—*Reversed and remanded.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.