WOOD BROTHERS THRESHER COMPANY, Appellant, v. L. M. EICHER, Chairman of Iowa State Highway Commission, et al., Appellees.

No. 45811.

JANUARY 13, 1942.

Brammer, Brody, Charlton & Parker, for appellant.

G. H. Clark, Jr., Assistant Attorney General, and C. B. Hextell, for appellees.

BLISS, C. J.—Under Code section 5035.01 it is a misdemeanor for any person to drive or move, or for the owner to cause or knowingly permit to be driven or moved, on any highway any vehicle exceeding in size or weight the limitations specified in the chapter. Sections 5035.02 and 5035.03 are as follows:

"5035.02 Exceptions. The provisions of this chapter governing size, weight, and load shall not apply to fire apparatus, road machinery, or to implements of husbandry temporarily moved upon a highway, or to a vehicle operated under the terms of a special permit issued as provided in sections 5035.16 to 5035.19, inclusive.

"5035.03 Width of vehicles. The total outside width of any vehicle or the load thereon, except loose hay or straw, shall not exceed eight feet."

Section 5000.01 (14) states:

" 'Implement of husbandry' means every vehicle which is designed for agricultural purposes and exclusively used by the owner thereof in the conduct of his agricultural operations."

Other sections of the chapter contain limitations upon the height, length of vehicles, or combinations of vehicles, and for maximum loads, and the location of loads or weight on parts of the vehicle.

Chapter 177 of the 49th General Assembly authorizes the State Highway Commission to enforce these limitations, and to confer the authority of a peace officer upon employees designated as enforcing officers.

Plaintiff filed its petition on August 4, 1941, alleging: It is a corporation engaged in manufacturing, at Des Moines, threshing machines, combines, corn pickers and other implements of husbandry; the official capacities of defendants; its expenditure of money to make its products; said corn pickers are marketed by it through dealers in Iowa and surrounding states, many of whom have a volume of business insufficient to require carload shipments by rail, and that shipment of corn pickers singly or doubly by rail involves a prohibitive cost which would render plaintiff and such dealers incapable of competing with other corn pickers on the market; that so long as its purchasers can transport the corn pickers on the highways from the plaintiff and its dealers to their farms at a cost to them that is not prohibitive and is fair and reasonable in comparison with the cost of competitive machines on the market, plaintiff will be able to realize a small margin of profit on its invest-

ment in the machines; if this cannot be done, plaintiff's sales will be adversely affected and it will lose a substantial part of its investment and profit; since about July 15, 1941, numerous farmers, or their agents, in Iowa and surrounding states have been coming to its factory to purchase corn pickers for their own exclusive use, and, except as wrongfully prevented by defendants, have moved said machinery on the highways to their farms to be used; that section 5035.02 expressly provides that the provisions of the Code relating to width of vehicles and the load thereon shall not apply to implements of husbandry temporarily moved upon the highway, but notwithstanding and although the movement of the corn pickers is in a single unrepeated trip of strictly temporary character, the defendants "have repeatedly, in arbitrary and unlawful disregard of the provisions of said exemption section of the Code, wrongfully, and in breach of their duties and rights in the premises, stopped, molested, arrested, threatened with arrest and otherwise interfered with, hindered and prevented the said customers of plaintiff from so moving said corn pickers upon the highways or coming to plaintiff's factory to obtain delivery of said machines for the purpose of so moving the same on the highway, and have by such arrests, molestations, stoppings, threats, interference and hindrance, intimidated and frightened plaintiff's customers and caused plaintiff to lose sales and business and caused plaintiff's dealers to hesitate to make contracts for sale of corn pickers of plaintiff's manufacture and to refrain from doing so for fear of incurring the arrest and molestation and consequent expense and displeasure of their customers as a result of their moving or attempting to move said corn pickers on the highways, all to plaintiff's direct and irreparable damage and injury;" that defendants will continue these acts to the plaintiff's irreparable injury unless restrained; that sections 5035.16 to 5035.19 do not aid plaintiff; that defendants are not sufficiently financially responsible to recompense plaintiff, and it has no plain, speedy and adequate remedy at law; "that the defendants have, by inducing and bringing about delays in the trial of employees of customers of plaintiff whom they caused to be arrested, made it impossible to obtain final adjudications

in the criminal proceedings initiated by them, and defendants further refuse to be bound and to abide by the decision of any single Justice of the Peace or other Court, with the result that acquittal in and with respect to any single arrest will not afford plaintiff or its customers any protection or relief from further arrests and persecution.''

There is not only no support in the record for the last quoted allegation, but the record clearly establishes the contrary.

The petition contains no allegations as to how the corn pickers were moved on the highway, or the width, height or weight of the corn picker, or their structure, or any allegations of fact sustaining the claim of unlawful conduct on the part of any defendant, or any allegations of fact to support the naked claim that any damages present or prospective were irreparable.

Plaintiff prayed ''that a temporary injunction issue restraining * * * the defendants, and each of them, and their agents and employees, from stopping, molesting, arresting, threatening with arrest, hindering or otherwise interfering with purchasers of Wood Brothers Thresher Company corn-pickers, their agents or employees, while hauling or moving said corn-pickers from the factory of Wood Brothers Thresher Company at Des Moines, Iowa, to the farms owned or rented by said purchasers, on account of alleged violations of Iowa statutes relating to size, weight and load of vehicles, and that upon final hearing such injunction be made permanent.''

The petition was verified. There was an order on August 4, 1941, for a temporary injunction as prayed, without notice to defendants, and such a writ was issued on the same day and served on August 11, 1941.

Defendants filed verified answer admitting the manufacture of machinery by plaintiff at its factory and numerous deliveries thereof since July 15, 1941, as alleged in the petition, and averred their transportation by trucks over the highways in loads more than eight feet wide in violation of Code section 5035.03 et seq. They alleged that plaintiff was doing the transporting and that in doing so neither it, nor the machines delivered, nor the manner of their transportation, came within

any exception of Code section 5035.02; that such transportation was a violation of section 5035.01 et seq., and that any arrests made or other actions complained of against the defendants were done in the rightful and authorized performance of their statutory duties. All other allegations of the petition are denied, or are averred to be of no materiality.

At the same time, defendants filed a motion to dissolve the temporary injunction, alleging in substance the allegations of the answer, and making the latter a part of the motion by reference. A motion to strike parts of the answer was never ruled upon. We find no prejudicial error in this.

A hearing was had on the motion to dissolve, at which defendants introduced evidence. It appears therefrom that on July 16, 1941, a defendant peace officer arrested a truck driver from Blairsburg, Iowa, on whose truck was a "combine" purchased from the plaintiff, with a load overwidth of nine inches. He was not fined but paid the costs. On the same day, a truck driver from Owatonna, Minnesota, was arrested with a "combine" purchased from the plaintiff with an overwidth of nine inches. He paid a fine of $5.00 and costs. On July 18, 1941, a truck driver and owner of Ventura, Cerro Gordo County, Iowa, was arrested with a "combine" purchased of plaintiff on his truck with an overwidth of nine inches. He paid a fine of $1.00 and costs. These arrests were just out of Des Moines. On July 29, 1941, a truck driver was arrested one mile east of Mechanicsville, Iowa, with a corn picker purchased from plaintiff on his truck, with an overwidth of three inches. He paid a fine of $2.00 and costs. On August 1, 1941, at 3:15 p. m., James Dillingham, driving a truck owned by the Heible Implement Company of Davenport, Iowa, was arrested one-half mile east of Des Moines on Highway No. 6, with two corn pickers purchased of plaintiff loaded one in front of the other, crosswise on his truck, with a five-inch overwidth all on the left-hand side of the truck facing forward. The driver said he was driving the truck for a motor sales company at Davenport and was hauling the corn pickers to some people near there who had purchased them. The driver had in his possession two affidavits, stating they had been sworn to before a notary public in Scott

County, Iowa, on August 1, 1941. Each affidavit stated that the affiant was a farmer and that he had hired the truck driver "in the matter of temporarily moving said corn picker from Des Moines, Iowa, to my home; that said corn picker was purchased by me for my own exclusive use in the conduct of my farming operations * * *." The corn pickers were fully set up. When this driver was taken before the Justice of the Peace on August 1, 1941, he telephoned Gerald A. Jewett, Assistant Treasurer of plaintiff, who came to the office of the Justice. The Highway Commission's attorney could not be present and the hearing was set for August 15th. The plaintiff (appellant herein) posted a cost bond of $100. At the hearing in Justice Court on September 5, 1941, the attorney for the truck driver, who is one of the attorneys for the appellant, requested the Justice to defer decision until after the injunction suit had been decided.

In addition to the five arrests above noted, there were six other arrests, up to August 22, 1941, of truck drivers of over-width loads of farm machinery not purchased of appellant. One case was a John Deere combine having an overwidth of three feet and five inches. Another was a load of farm machinery with an excess width of eight inches. A similar load had an overwidth of one foot. Another load containing a manure spreader and seven plows had an excess width of one foot. There was a load with a new tractor having an overwidth of five inches, and another truck with two salvage tractors on it with an excess width of two feet six inches. The defendant, Messer, said the truck last mentioned purported to have been loaded at the dock of Wood Brothers, but Mr. Jewett testified that these tractors were not sent out by them. Mr. Messer also testified that on the 4th day of August, 1941, the day the injunction was issued, he saw two trucks at a service station, by the highway, one of which was loaded with four corn pickers made by the plaintiff, and the other carried two of such corn pickers. All of the truckers arrested pleaded guilty except Dillingham. Truckers, other than those hauling farm machinery of plaintiff, were also stopped and their loads of machinery measured, but the machines were knocked down, and none of the loads exceeded eight feet in width. The only testimony introduced by the

plaintiff was that of Mr. Jewett respecting the load of tractors, which was offered as rebuttal. No testimony was offered in support of the allegations of the petition, and there were no allegations in the petition that the corn pickers cannot be hauled in crates, or knocked down, or lengthwise on a truck, and thus keep the load within an eight-foot width.

I. The case of the appellant, under the record, does not appeal strongly to the conscience of a chancellor. It is seeking to enjoin peace officers, expressly authorized and directed to enforce statutory provisions enacted for the purpose almost entirely of benefiting and protecting the general public, —of safeguarding the lives, limbs and property of those who use the highways of this state—from performing their duties. It is asking a court of chancery to construe criminal laws and control their enforcement, to interfere with peace officers in the exercise of their judgment in performing their duties, to exempt only certain alleged violators of the law who transport merchandise sold by the appellant, and to deprive the state of Iowa and certain specified defendants from the right to have matters growing out of alleged violations of criminal statutes determined in courts of law and by a jury. The rights of no one arrested by defendants are involved in this litigation. They paid whatever fine was assessed and have not appealed. The only exception was Mr. Dillingham. When he was arrested, he called an officer of the appellant, who appeared in court and the appellant put up a bond for him, and one of the attorneys for appellant appeared in his defense, and when the hearing was over the attorney did not ask for a prompt decision by a court having complete jurisdiction, and from whose adverse decision an appeal might have been taken and the question before us determined, but he requested the Justice of the Peace to defer his decision until he could secure an injunction and a decision in the forum of equity.

The writ of injunction is a high prerogative writ to be issued only with extreme caution and discrimination in such cases where the probabilities reasonably and fairly establish that the petitioner will suffer an irreparable injury if the relief is not granted. A temporary ex parte injunction is particularly

558

drastic. The balance of inconveniences must be very clearly on the side of the petitioner. But what do we have here? No one connected with the appellant has been arrested. It has not been directly injured. But it asks this court to continue a very definite hazard which threatens the lives, limbs and property of all highway users, to the end that it may more successfully meet competition, and maintain its accustomed profits. It has not brought itself within those principles and grounds of equity entitling it to the relief prayed for. The trial court did not abuse its discretion in dissolving the injunction and its order was fully justified. We call attention to but a few of the numerous authorities supporting the trial court. Speaking of injunctive relief against the enforcement of statutes and ordinances, the author in 28 Am. Jur. 369, section 181, states:

"However in observance of the rule that courts will not, except under extraordinary circumstances, interfere with the duties of other departments of the government, equity will not ordinarily interfere with the action of public officers taken under statutory authorization. The power thus to arrest the hand of an officer as he is about to carry out the command of the legislature is to be exercised with a wisdom and discretion commensurate with its greatness; no trivial grounds will be sufficient to authorize the granting of such extraordinary relief. Preventive relief against the enforcement of statutes is in most instances predicated on invalidity, for it is quite settled that equity will not attempt to restrain the carrying into operation of a valid statute or ordinance but will leave the party to his remedy at law."

This court has repeatedly held that equity will generally decline to interfere with the administration of valid laws against crimes or quasi crimes (Mart & Son v. Grinnell, 194 Iowa 499, 501, 187 N. W. 471; Snouffer & Ford v. City of Tipton, 161 Iowa 223, 230, 231, 142 N. W. 97, L. R. A. 1915B, 173; Home Savings & Trust Co. v. Hicks, 116 Iowa 114, 117, 118, 89 N. W. 103; Ewing v. Webster City, 103 Iowa 226, 230, 231, 72 N. W. 511; Long v. State Highway Comm., 204 Iowa 376, 378, 213 N. W. 532; Cook v. Davis, 218 Iowa 335, 337,

252 N. W. 754; Dietz v. Cavender, 201 Iowa 989, 208 N. W. 354; Huston v. Des Moines, 176 Iowa 455, 464, 156 N. W. 883; Huss v. Creston, 224 Iowa 844, 278 N. W. 196, 116 A. L. R. 242; Joyner v. Hammond, 199 Iowa 919, 200 N. W. 571, 36 A. L. R. 934; Des Moines Drug Co. v. Doe, 202 Iowa 1162, 211 N. W. 964).

The fact that peace officers may be mistaken in their conclusions of fact, or in their interpretation of the law, or of any statutory provision, does not authorize a court of equity in restraining them in their future efforts to conscientiously enforce the law. They may make mistakes, and those arrested may be acquitted, but such matters do not justify a blanket injunction against honest law enforcement. Des Moines Drug Co. v. Doe, supra (202 Iowa 1162, 1165). The issuance, or refusal to issue an injunction, or the dissolving of an injunction, rests largely in the sound discretion of the court, dependent upon the circumstances of the particular case. Simmermaker v. International Harvester Co., 230 Iowa 845, 298 N. W. 911; Keister v. Bengston, 193 Iowa 425, 432, 187 N. W. 4; Carpenter v. Kruidenier, 193 Iowa 390, 393, 187 N. W. 1; Peoples Sav. Bank v. McCarthy, 207 Iowa 162, 164, 222 N. W. 372; Beidenkopf v. Des Moines L. Ins. Co., 160 Iowa 629, 142 N. W. 434, 46 L. R. A., N. S., 290. In the last cited case, Justice Weaver with reference to the issuance of a temporary injunction, quoted (page 639) from Bonaparte v. R. R. Co. Baldw. 205, Fed. Case No. 1617, as follows:

" 'There is no power the exercise of which is more delicate, which requires a greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction;' * * *." He quoted thus from Stevens v. R. R. Co., 20 N. J. Eq. 126: " 'An injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law about which there may be doubts, which has not been settled by the * * * law of this state.' " Justice Weaver then states, on page 640: "Even where the technical right to injunctive relief is otherwise clearly established, it will be denied where the issuance of the writ may occasion inconvenience to the public and serious loss to the de-

fendant, while the injury to the plaintiff can readily be compensated in damages.''

■ Loss of conjectural profits, under the record here made, does not justify the relief sought. Majestic Theater Co. v. Cedar Rapids, 153 Iowa 219, 224, 133 N. W. 117, Ann. Cas. 1913E, 93; Ewing v. Webster City, supra (103 Iowa 226, 232).

■ II. Is the ''moving'' of one or more corn pickers, loaded on a truck, over the highways of the state, when the width of the loaded truck exceeds the statutory limit of eight feet, and the distance of transportation is without limit, within the italicized exception of the following Code section, to wit:

''5035.02 Exceptions. The provisions of this chapter governing size, weight, and load shall not apply to fire apparatus, road machinery, *or to implements of husbandry temporarily moved upon a highway,* or to a vehicle operated under the terms of a special permit issued as provided in sections 5035.16 to 5035.19, inclusive.''? (Italics supplied.)

It is our judgment that the legislature never intended the section to be so construed. The chapter which contains this and other sections covers over 50 pages of the Code. It is entitled ''Motor Vehicles and Law of the Road.'' The last four words of the title are indicative of the purpose of the legislation. One of the purposes, if not the primary purpose, of the legislation, is to make travel upon the highways as safe as it can reasonably be made consistent with their efficient use. ''In construing a statute we must never lose sight of its object and intent.'' Beatty v. Cook, 192 Iowa 542, 545, 185 N. W. 360, 361. Each section of such legislation must be construed with the act as a whole, and with every other section.

Most of our paved highways are eighteen feet wide. If they have curved and elevated edges, forming modified gutters, the width is lessened somewhat. The extreme importance of each vehicle keeping on its side of such paved roads is evident. With a desire to accommodate traffic as fully as possible, consistent with safety, the legislature fixed the width of vehicles or any load thereon at eight feet. This clearly indicates that it

judged such a width as the limit of reasonable safety, and that any excess in width increased the traveling hazards.

The legislature also realized that there were vehicles of a greater width than eight feet, and that at times it is necessary that they move or be moved over the highways. For that reason, there are provisions for securing permits for travel under certain circumstances. (Sections 5035.16 to 5035.19, inclusive.) Fire apparatus must necessarily travel over the streets, and sometimes over country highways. Road machinery for highway maintenance or construction must also operate over the highways. There are also vehicles or a combination of vehicles requiring a travel permit under section 5035.16. All of these move, travel, or operate on their own wheels, or other instrumentalities for movement. None of them are intended to be transported on trucks or other carrying vehicles.

There are implements of husbandry which are wider than eight feet. In the operation of farming, it is often necessary that they move or be moved on the highway either to different parts of the farm or to other farms. During the farm changing season before March 1st, or at other times, all of the implements of a farmer must be moved to the new location. If the implements are to be moved on a railroad car, it will be necessary to pass over the highway to the railroad loading dock. Most farm implements for use in the field operate on wheels. And these reasonably short, temporary movements, just mentioned, are ordinarily accomplished in the same manner on the highways. The trip is usually made in daylight. The movements are slow. They are visible at all times to other motorists on the highways. The dangers of any excess encroachment upon the highway are greatly lessened, in conformity with a primary object of traffic legislation. Every reasonable requirement of agriculture is met without unnecessarily adding to those dangers incident to general vehicular traffic. The men, women, and children on the farms of Iowa, in all fair likelihood, use the highways more than any other class of its citizens. Their interest in the safety of those highways is commensurate with such use. Their movement of farm machinery on the highways is a very minor part of their highway travel. Corn pickers will in all

probability cost them no more if appellant's machines are delivered as competing machines are delivered.

To adopt the construction of section 5035.02, so strenuously contended for by appellant, would substantially increase the dangers of highway travel, and would be of slight, if any, benefit to the farmers. Under this record, corn pickers were being transported from Des Moines to the borders of the state. A part of this traffic would be at night. The excess width would extend beyond the marginal lights of the truck. Appellant speaks of the excess as "microscopic." But it is sufficient to cause a collision with serious results. But under its contention, the three or five, or nine inches could lawfully be increased to that many feet. It alleges that "numerous farmers residing in Iowa and surrounding states" have been transporting corn pickers over the highways of the state. It speaks of such a movement as "a single unrepeated trip of strictly temporary character." Appellees contend that these shipments of machinery in trucks containing from two to four corn pickers on a load were not arranged by individual purchasers, but were trips conducted by appellant in evasion of the statutes. It is not necessary that we make any finding on this point, as either method is a violation of these Code sections.

■ It is our judgment that the legislature never intended the construction of section 5035.02 insisted upon by appellant. It is a well-known rule of statutory construction, that any exemption or exception in a statute contrary to its general enacting clause, must be strictly construed, and all doubts should be resolved in favor of the general provision rather than the exception. 59 C. J. 1092; Reaves v. State, 181 Tex. Cr. Rep. 488, 50 S. W. 2d 286; Palmer v. State Board, 226 Iowa 92, 94, 283 N. W. 415; United States v. Dickson, 15 Pet. (U. S.) 141, 10 L. Ed. 689.

" * * * statutes intended for public benefit are to be taken most strongly against those who claim rights or powers under them, and most favorably to the public. * * * those who claim the exception must establish it as being within the words, as well as the reason thereof." Hawkeye Portland Cement Co. v. Chicago, R. I. & P. Ry. Co., 198 Iowa 1250, 1255, 201 N. W.

16, 19. See also Oliphant v. Hawkinson, 192 Iowa 1259, 1263, 183 N. W. 805, 33 A. L. R. 1433.

It is our conclusion that the judgment and decree of the trial court is right, and it is hereby affirmed. The stay order of this court entered on September 10, 1941, restraining the defendants from making the arrests complained of is hereby canceled and set aside. We have given consideration to all matters argued.—Affirmed.

SAGER, HALE, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.