City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Elmhurst National Bank, as Trustee Under Trust No. 717, Defendant-Appellant.

Gen. No. 48,515.

First District, Third Division.

April 25, 1962.

Bernard Allen Fried, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The Elmhurst National Bank, as trustee, owns, operates and controls two buildings on one lot at 1346 West Walton Street, Chicago. The three-story brick building on the front of the lot and the two-story frame building on the back of the lot have two apartments on each floor. One count of the City's two-count complaint charged that the "defendant failed to provide an additional direct means of vertical egress" for the three rear apartments of the brick building, in violation of the city's building Code. The second count made the same charge in reference to the first floor rear apartment and the two second

floor apartments of the frame building. The defendant was found guilty and fined $50.00 on each count.

The trial judge certified that the validity of a municipal ordinance was involved and that the public interest required a direct appeal to the Supreme Court. The Supreme Court found the issue concerned the construction and application of the ordinance rather than its validity and transferred the case to this court. City of Chicago v. Elmhurst Nat. Bank, 22 Ill2d 206, 174 NE2d 799.

The ordinance is as follows:

> "78–5.1(a) In existing buildings where exits do not comply with the requirements of chapter 67 and in which hazardous conditions exist because of the number, width, construction or location of exits, the commissioner of buildings may order additional exits to assure adequate safety of the occupants.
>
> "(b) Every existing building shall have not less than the minimum number of required exits as prescribed in section 67–4."

The defendant's principal contentions are: (1) the buildings in question were constructed many years before the adoption of the ordinance in 1949 and are what the ordinance describes as "preordinance buildings," therefore, they do not come under section 78–5.-1, which pertains to "existing buildings"; (2) the defendant was charged in both counts with violating section 78–5.1, but no evidence was produced of any infraction of the provisions of subsection (a) and, therefore, the City's proof was deficient; (3) subsection (b) refers to the number of required exits "as prescribed in section 67–4," but the City failed to prove the buildings do not come within the exceptions enumerated in section 67–4, and (4) the City offered no proof that there were no other vertical exits avail-

385

able to the apartments such as ladders, ropes, ramps, slide poles, fire escapes, escalators, and the like. We shall consider these contentions in the order named. ■ ■ (1) The words "existing" and "preordinance" appear at the start of chapter 78:

"Chapter 78. Existing Buildings

General Provisions

78.1 Every existing building, structure or part thereof, as herein defined, shall comply with the requirements of this chapter.

Definitions

78.2 (a) Existing Building. A building structure or part thereof which has been completed and ready for occupancy.

(b) Pre-Ordinance Building. Every existing building, structure or part thereof which was completed, or for the construction of which a permit was issued prior to the effective date of this ordinance."

From these definitions it can be seen that "existing buildings" is the more comprehensive term and that it includes within its meaning "preordinance buildings." A preordinance building is an existing building, one completed or in the process of construction before the ordinance became effective. A building can be both existing and preordinance; the terms are not necessarily exclusive. This conclusion is substantiated by a study of chapter 78. The aim of ordinance construction is to ascertain and give effect to the intention of the lawmaking body as disclosed by the language used. Reitman v. Village of River Forest, 9 Ill2d 448, 137 NE2d 801; Pressley v. City of Chicago, 26 Ill App2d

283, 168 NE2d 41. Although the terms "existing buildings" and "preordinance buildings" are not as precisely defined as might be wished, the intent of the Chicago City Council is apparent. There are different provisions in chapter 78 for existing and preordinance buildings. When the City Council meant to distinguish preordinance buildings from existing buildings it clearly did so and some sections pertain to them alone but, unless there is such a distinction, all provisions of chapter 78 apply to existing buildings, as is made plain by 78–1: "Every existing building, . . . shall comply with the requirements of this chapter." Section 78–5.1 uses the term "existing buildings" and no exception is made for preordinance buildings. The defendant's buildings are preordinance buildings but they are also existing buildings, and as existing buildings they come under and must comply with section 78–5.1.

■ (2) Both counts of the complaint charged a violation of section 78–5.1 of the municipal code but neither count specified which subsection was violated. However, the indicated violations were under subsection (b) because both counts accused the defendant of failure to provide an additional egress in each building. There were no preliminary motions, the parties proceeded to trial and the proof was directed to this subsection only. To sustain a finding of guilty under the complaint it was not necessary for the City to adduce evidence of noncompliance with subsection (a).

■■ (3) Subsection (b) provides that existing buildings shall have not less than the minimum number of exits as prescribed in section 67–4 of the City code. Section 67–4 in turn provides: "There shall not be less than two exits from every building, floor, space or room, except that one exit shall be permitted under the following conditions. . . ." Numerous ex-

387

ceptions are then set forth. Neither the City nor the defendant produced proof as to whether these exceptions had any relation to the buildings. The defendant argues that it was the City's burden to prove that the buildings did not come under the exceptions. The City argues that if the buildings came within one or more of the exceptions it was the defendant's burden to prove this.

The burden of proving its complaint was upon the City. Its evidence established that there are two stairways in the brick building, one of these is on the Walton Street side and serves the three front apartments; the second is in the middle of the building and is used by the occupants of both the front and rear apartments. Thus, the three front apartments in the brick building have access to two stairways, the rear apartments to one. The frame building has one stairway; this is in the center of the building and is used by the occupants of all four apartments. The front apartment on the first floor has an additional exit, a door opening onto an outside porch. Therefore this apartment has two means of egress; the other three apartments in the frame building have but one. This evidence was sufficient to prove the defendant's noncompliance with section 78–5.1(b). The burden of going forward with the evidence then shifted; it became the obligation of the defendant to prove that its buildings were within one or more of the exceptions enumerated in section 67–4, or that it was otherwise exempt from the ordinance. This proof was essential to the defendant's case; it was not to the City's. 9 Wigmore (3rd ed) sec 2486. If the exception is not in the enacting clause of a statute or ordinance, and it was not in this case, a party claiming to be within the exception must show that fact to avoid the operation of the statute or ordinance. The People v. Douglas, 281 Ill 478, 118 NE 94. A party wishing to

benefit by an exception must prove that he comes within it. People v. One Mechanical Device, 9 Ill App2d 38, 132 NE2d 338; Woods Bros. Thresher Co. v. Eicher, 231 Iowa 550, 1 NW2d 655; Walling v. Reid, 139 F2d 323; 82 CJS, Statutes, sec 382.

██ (4) The fourth point is like the third. The building code permits, under certain conditions, vertical exits such as ramps, escalators, smokeproof towers and slide poles. The defendant maintains that it was the City's burden to prove the negative fact that the buildings had no means of egress other than the stairways. We disagree. It was the City's initial burden to prove, which it did, that the apartments in the defendant's buildings did not have more than one means of egress. It then became the defendant's burden to show, if such was the fact, that the apartments did have more exits which, under the building code, were acceptable as substitutes for stairways. The burden is upon the party to whose case the negative fact is essential. Whoever asserts a claim or defense which depends upon a negative must establish the truth of the negative. Abhau v. Grassie, 262 Ill 636, 104 NE 1020.

The City proved by a clear preponderance of the evidence the defendant's violation of the ordinance. The judgment of the Municipal Court is affirmed.

Affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.