STEVENS *vs.* THE PATERSON AND NEWARK RAILROAD CO.

1. An injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law about which there may be a doubt which has not been settled by the courts of law of this state.

2. So far at least as incorporeal rights are concerned, it has been determined in this state, that an injunction cannot issue to prevent the lands in which these rights exist from being taken by a corporation, for public use, without compensation being first made.

3. Whether the owner of land along the shore on tide waters has any right in the shore or the lands under water, by reason of adjacency, or by the provisions of the wharf act, is a disputed question, not settled by the courts of law in this state, and an injunction will not be granted to protect the shore owners in such rights.

On rule to show cause why an injunction should not issue to restrain the defendants from building their road on the shore of the Passaic river, where the tide ebbs and flows in front of the complainant's lands, until compensation has been made in the manner provided by law.

*Mr. G. N. Abeel* (with whom was *Mr. McCarter,*) for complainant.

Riparian owners on navigable streams have vested rights in their adjoining waters, of which they cannot be deprived without compensation. These rights are towing, landing, lading, and unlading, right of way to shore, to draw nets, erecting fishing huts, fishery, ferry. *Gough* v. *Bell,* 3 *Zab.* 624.

These rights are recognized by a court of law, and are consequently ascertained at law. These rights are also ascertained by the " wharf act," which is simply declaratory of the common law. *State* v. *Brown,* 3 *Dutcher* 33. These rights are recognized by the Chancellor, in *Stockham* v. *Browning,* 3 *C. E. Green* 390, and will be protected in equity.

The case of *Prudden* v. *The Morris and Essex R. Co.,* (Court of Errors, February Term, 1869,) does not militate

against this position. In that case, the right of complainant was entirely in doubt; in this case, not at all. Legislative acts throw no doubt upon principles recognized by the courts.

The Paterson and Newark Railroad Company have a rule laid down in their charter for acquiring right of way, and especially as to the rights of shore owners, which are recognized by section two of supplement to their charter, approved February 22d, 1866.

The railroad company cannot claim to take any of the rights of the state in the shore, without grant set out in express terms.

The charter must be construed in favor of the state. *Keyport Steamboat Co.* v. *Farmers Transportation Co.,* 3 *C. E. Green* 13.

The riparian act of 1869, applies only to Hudson river and Kill von Kull, and is no precedent in collateral questions for courts, as it has not been adjudicated, and may be unconstitutional.

This case comes within the injunction power of the Court of Chancery. *Bonaparte* v. *C. & A. R. Co.,* 1 *Bald.* 205. The defendants admit that they propose to build a structure of piles several feet above the level of the surface, on the shore along Stevens' entire front, and to lay railroad tracks thereon. This will entirely cut off Stevens from the use of his water front, which use is a most valuable privilege. The injury is continuing and irreparable; there is no adequate remedy at law; the act of the railroad company is a wanton attack on private rights, and should be enjoined.

*Mr. Keasbey* and *Mr. Parker,* for defendants.

THE CHANCELLOR.

The defendants, by their charter and its supplements, are authorized " to lay out and construct and run their railroad along the Passaic river, from the village of Belleville to any point in the city of Newark, at or near Governeur street,

and to acquire the rights of the shore owners in the manner prescribed in the charter in other cases." The complainant owned a lot of land fronting on the Passaic river between Belleville and Newark, being a part of the river where the tide ebbs and flows. The defendants laid out their road on the shore, or space between high and low water, in front of complainant's lands; and they intend to construct their road over that part of the shore, without making any compensation for it.

There are two questions: One whether the complainant has any settled definite right in this shore, such as entitles him to protection; and the other, whether the injury is of such irreparable character as to entitle him to the interference of this court by injunction.

The complainant, as shore owner, is by the wharf act, entitled to reclaim the shore in front of his lands; and when reclaimed, to appropriate it to his own use. This right is vested in him absolutely, and without condition. It does not, like the right to reclaim beyond ordinary low water, require a license for its exercise. This right, so granted by law to every shore owner, is, in my opinion, property; it is an easement in the land of another, an incorporeal hereditament like the right of way or of common, or the right to back water, or to dig turf, or to dig ore; and if such, it is under the protection of the constitution, so that it cannot be taken by any one but the state, without being first paid for. The title of the land is, by this act, left in the state until reclaimed, and then by force of the words " it shall be lawful to appropriate the same to his own exclusive use," it becomes vested in the shore owner. The object of this act was to settle the questions which had arisen as to the right of owners of lands upon tide waters, to the shore in front of them. The courts, in the case of *Gough* v. *Bell*, then in litigation, determined that, by a local, settled common law, such shore owner might reclaim the shore and lands under water in front of his lands, if he did not obstruct navigation, and was not interfered with or prevented by the state while doing it;

and that the shore and land under water when so filled in belonged to the shore owner; and that the state could grant no title in them. This was the point of the case; the defendant justified under a grant from the state, of lands so filled in previous to the grant, and the courts held the grant .void. But it was also determined, that until such filling in or reclaiming, the title to the shore and lands under water was in the state. This part of the decision was contrary to the general impression among lawyers, conveyancers, and land owners; the common opinion was, that the shore owner held the title to low water. The act went further than the decision of the courts in two respects : First. It gave to the shore owner the absolute, unqualified right to fill in to low water line without the condition, if the state did not interfere to prevent him. Second. It gave to him the same right below low water line, on condition that it did not interfere with navigation, which was first to be ascertained by the chosen freeholders of the county, whose license was necessary to the exercise of this right; subject, also, to the right reserved by the act, for the state to appropriate for public use the lands under water, as distinguished from the shore, at any time before they were actually reclaimed.

By the practice of courts of equity, as well in England as in this and other states, railroad companies and corporations of like character have been restrained from taking the lands or property of individuals until they had first acquired title or paid compensation, when that was required either by the charter or by constitutional provision. This doctrine was first introduced in New Jersey in the case of *Bonaparte* v. *The Camden and Amboy R. Co.*, in the Circuit Court of the United States. *Baldwin's R.* 205. The court there said " that the complainant may recover damages at law, is no answer to the application for an injunction against the permanent appropriation of his property for the road under a claim of right; this is deemed an irreparable injury for which the law can give no adequate remedy, or none equal to that which is given in equity, and is an acknowledged ground for

its interference." The position is taken, that the law does not leave the owner to seek his remedy for property already appropriated and seized, but has prescribed the terms on which alone it can be taken. Upon this doctrine, the practice has been to require no other irreparable injury to be shown as the ground of an injunction. In most cases of this nature the injury is not irreparable in any other sense. Taking or removing an old homestead may be, in many cases, an irreparable injury in fact. But this the law gives authority to do, and equity can give no protection against an act authorized by law. Taking the land thus authorized to be taken, without compensation first made, is not literally an irreparable injury. The only wrong is the want of payment. If the value or damage is $10,000, that amount can be recovered at law, and the injury will be repaired. If courts proceed on the ground that taking property without compensation, and compelling the owner to pursue the wrong doer and litigate with him for the value, is a wrong of the kind which equity will prevent by injunction; then, in such cases, the small value of the property taken, or the small amount of the injury done, is of no consequence. In fact, when the amount is so small as not to equal the expense above taxable costs incurred in recovering it, the evil is greater and would more require protection. It is on this principle that the right to injunction in such cases was supposed to exist, and the injury put upon the same footing as those which were actually irreparable. So in cases of waste or clear nuisance, as in flowing back water, an injunction is the proper remedy, although in almost every case there is a remedy at law to recover for each injury as it occurs—damages easily measured in money.

But it is urged on part of the defendants, that principles by which this court must be governed in the granting of injunctions, have been established by the Court of Appeals in the decision in the recent cases of *The Morris and Essex R. Co.* v. *The Attorney-General,* and *Prudden,* (March Term, 1869); which, if they do not abrogate the rules so acted

on, greatly qualify them, and will take this case out of their operation. As the decisions of that court necessarily settle the law, and the practice of this court must be corrected when wrong, and be entirely controlled by that; and as in those cases questions involved in this were discussed and decided; they must receive careful attention.

The first of those cases was an information and bill combined. The relators and complainants were the owners of lots on a street in which the defendants were laying a second track of their road, which is a railroad operated by steam. The relators derived their title from the owner of a large tract, who had laid it out in blocks and streets on maps, and also by staking out and opening the street in question, on the ground. After this, he conveyed these lots of the relators, by deeds which bounded them on the street so mapped and opened. This street had been opened and used for more than thirty years, except so far as occupied by a single track of the defendants' road, which had been there for twenty years of the time. After the dedication a public highway had been laid out by an act of the legislature, one portion of which was upon a part of this street, being the part in front of the lots of the complainants; which highway, except in that part, was a different road from the street, and was a main thoroughfare for distant trade. This highway, including the part which coincided with the street, was vacated some years after the dedication and opening of the street and the conveyance of the lots. After this vacation the street, except the part occupied by the defendants' track, had been used by the public as a highway for over twenty years. The Chancellor held, that such laying out and opening of streets, and sale of lots bounded on them, dedicated them to the purchaser and public, as streets. This had been decided and settled by the courts of the state, and was not an open question. He further held, that if a road laid out for one object passed over and along another road, previously laid out or dedicated for another object, for part of its course, and the road secondly laid out was vacated, that such vacation did

not vacate the first road in the part where the two coincided, but that such part remained a public highway, as necessary to constitute the whole road first laid out, which was not intended as a whole to be vacated. This question had never been settled and decided by the courts of law in New Jersey, and was debatable. He also held, that the purchaser of lots on a street so laid out, had a right of way over the street so laid out, on which his lot was bounded in the deed, for its whole width at least to the next adjoining street on each side; and that if the public had accepted the dedication by laying out a highway over it, and then vacated that highway, still the right of the purchaser to a way over the street so dedicated remained as a right of property. This was an unsettled question never decided by the courts of New Jersey, and was one of the grounds on which the injunction was based.

The Court of Appeals held, that wherever the right or title upon which an injunction was based depended upon a principle of law not settled or determined in this state, and which was proper to be settled by the courts of law, an injunction ought not to issue until the question was so settled and determined; and that it would not on appeal, pause to consider whether such question had been correctly determined by this court, but would reverse the order because made on principles before undecided, without regard to their soundness. They declare that " it is unnecessary to express any opinion upon those questions," and the order was reversed without any examination of the principles on which the right was based. This determines that a court of equity must not grant an injunction in cases when the principal of law on which it depends is disputed, and has not been settled in this state. This, perhaps, is no new rule, but a more definite and strict application of the rule long established in courts of equity, that where the right of the complainant is doubtful, an injunction should not be granted until that right was established at law. The error into which the Chancellor had fallen in that case, was in assuming that when the facts were

not disputed, and the law seemed clear to *him*, the right was not doubtful, although the legal question had never been settled and decided in the courts of law, and might admit of doubt.   I think that it is right to assume that the decision was on this ground alone; for although something was said about the power of courts of equity to grant injunctions on information where an indictment will lie, and the circumstance that no very great or important inconvenience to the public was averred or proved, and it was remarked that the bill was defective in joining complainants, whose interests were distinct, and that the injury to the public, by delaying the construction of works important to travel, should prevent interference without strong reasons for it; yet the former decisions in that court will prevent an implication that it was upon these grounds, where it is not so expressly declared, and those decisions are not adverted to and overruled.

In the case of the *Attorney-General* v. *The Paterson and Hudson River R. Co.*, 1 *Stockt.* 526, on an information filed at the relation of two persons, who were also complainants in the bill, and whose interests were separate, to stop the construction of a bridge, part of one of the oldest and most important railroads in the state, the Court of Appeals, reversing the decision of the Chancellor, ordered an injunction to stay the building of the bridge, which, if unauthorized, was an indictable nuisance, until it was determined whether it was being built in the position authorized by the charter.   And in the case of *The Attorney-General* v. *The Newark Plank Road and Ferry Co.*, 1 *Stockt.* 754, upon an information in which several persons with distinct interests were joined as complainants, and the injury complained of was projecting piers into the Passaic further than authorized by the charter, clearly an indictable nuisance: and when the question was the meaning of the charter, and no great or serious injury to the public by the extension was alleged or proved, the Court of Appeals unanimously affirmed the decree of Chancellor Halsted granting an injunction, which had been approved and acted upon by Chief Justice Green,

sitting for Chancellor Williamson. From these considera-
tions, I think that I cannot be mistaken in my conclusion as
to the ground on which the decision of the Court of Appeals
was founded.

In one of these two Morris and Essex Railroad appeals
before mentioned, the information was for the obstruction of
a public street as a public nuisance; and in the other, the
bill complained of taking and occupying, without compen-
sation, lands over which the complainant claimed he had a
right of way by the dedication, distinct from the right of
the public, and also because the obstruction in the highway
would inflict upon him an injury different from that suffered
by the rest of the public. The opinion of the court, as de-
livered by Justice Depue, applies to these cases the rule,
" that an injunction ought not to be granted when the ben-
efit secured by it to one party is but of little importance,
while it will operate oppressively, and to the great annoy-
ance and injury of the other party, unless the wrong com-
plained of is so wanton and unprovoked as to deprive the
wrong-doer of the benefit of any consideration as to its in-
jurious consequences;" and, also, declares " that the complain-
ant, for the contingent and consequential damages which he
may suffer from any interference with his property, has the
remedy by action at law whenever, and so often as loss or
damage accrues, and if the use of the railroad in front of
his house becomes a nuisance, or the aggression proves to
be a permanent injury, without an adequate remedy at law,
then the court will be competent to administer equitable
relief by injunction to prevent its continuance, or for its
removal." So far, therefore, at least, as incorporeal property,
or rights, or easements, are concerned, it determines that an
injunction cannot issue to prevent the land on which these
rights exist from being taken and the rights themselves de-
stroyed, without compensation first made, but the party ag-
grieved must first resort to his remedy at law.

The ruling of the court in *Drake* v. *The Hudson River
R. Co.*, 7 *Barb.* 508, that " a strong case must be pre-

sented, and the impending damage must be imminent and impressive to justify the issuing of an injunction as a precautionary and a preventive remedy," is quoted with approbation, and applies to these cases.

These rules, so established as the law of this court, as regards the rights infringed, and the nature and extent of the injury requisite to authorize an injunction, if either of them apply to this case, as contended by the counsel of the defendants, must control it, and prohibit the issuing of any injunction.

I am of opinion that they do apply. In the first place, the title of the complainant depends upon his right as shore owner by reason of adjacency, and his right under the wharf act. Neither of these have been settled or adjudicated by the courts of law in this state, and both are to a certain extent disputed and doubted; for I do not infer that the Court of Appeals intended to hold that a right depending upon a question of law not actually decided in the courts, if there was no real doubt or dispute about it, could not be protected by injunction.

These questions are both considered as doubtful by many in such manner that this court must notice it, and neither has been adjudicated by the courts of law in this state.

As to the right of adjacency. Although in the noted case of *Bell* v. *Gough*, 3 *Zab.* 624, several of the judges, in their opinions, held such right to exist, yet a majority of those whose voice decided the cause expressed no opinion on the subject, and as the question was not necessary to the decision, these opinions, though not dissented from, do not alter the law. And the opinion delivered in this court, in the case of *The Keyport Steamboat Co.* v. *The Farmers Transportation Co.*, 3 *C. E. Green* 13, in reviewing those opinions for another purpose, expressly declares that the decision in that case does not determine the question; and the Chief Justice in this last case, in the Court of Appeals, *Ibid* 516, avoids expressing any opinion upon it. In *Gould* v. *The Hudson River R. Co.*, 2 *Selden* 522, the Court of Errors held that

the shore owner had no such right. I think that this may be fairly considered a doubtful question of law not settled in this state.

The right of the complainant in the shore, by virtue of the wharf act, although by many it may be considered beyond question upon established principles of law, and although it seems so to me, yet is doubted by some, and depends upon a question that has not yet been settled or passed upon by the courts of law in this state. The recent act of the legislature concerning riparian rights in the bay of New York, approved March 30th, 1869, was produced and relied on by the defendant to show that this right was questioned by the legislature, and it sustains the position. For although the thirteenth section provides a way in which the shore owner may have compensation for his rights in the shore, it is qualified by the addition of the words " if any he have," to these rights wherever mentioned; showing plainly that the legislature considered it doubtful if there were any such rights. The third section repeals the wharf act as to the tide waters on the Hudson and bay of New York, and declares that no person shall fill in the lands under water there, without a grant from the commissioners. Had the legislature considered that any right had, by virtue of the wharf act, become vested in the shore owners, they would not have attempted thus to divest it; for it would be beyond their power, as much as the rights to the minerals below the surface of his land, and to occupy exclusively the space above it *usque ad coelum*, are beyond legislative control, being vested in the owner as incidents and appurtenances of the soil; and the exclusive right to fill in and appropriate the shore if once vested in the shore owner by general law, whether customary or statutory, would be like these, beyond the control of any general law limiting or taking away the right.

The eighth section goes still farther, and directs the shore to be conveyed absolutely to a stranger, if the shore owner refuses to purchase it of the state; and this, not for any public use or purpose, so as to bring it within the power of eminent

domain, but the conveyance is authorized for private purposes solely. The provisions of the thirteenth section only show that the legislature had some doubt as to the right to exclude the shore owner from the shore and lands under water in front of him. The provision in the defendants' charter, giving to the defendants power to acquire the rights of the shore owner, does not, as contended by the complainant, recognize this right, but provides for extinguishing it, if it shall be found necessary; it gives the power by way of precaution.

When it thus appears that the law making power of the state consider this right doubtful and unsettled, it must be held so by this court; and although I may be clear in my own convictions of the right, I am not at liberty to grant an injunction on that conviction, until the question of law has been settled by the courts to which it positively belongs.

With regard to the injury, it is in no sense " a strong case of danger, imminent and impressive." The only irreparable injury is taking from the complainant a right of property, without compensation *first* made. His land is not taken, but only an incorporeal right; and for this injury to the enjoyment of his property, he " has his remedy by action at law as often as loss or damage occurs." Were the right clear, the injury is not such as would entitle the complainant to the· preventive remedy by injunction, according to the rule above laid down.

The case of *Stockham* v. *Browning*, 3 *C. E. Green* 390, is urged on part of the complainant, as establishing that the right and injury in this case are sufficient to entitle him to an injunction. But in that case the defendant did not enter on the shore and lands in front of the complainant, by authority of the state, the owner of the fee; but he claimed the part so entered upon as within his own right under the wharf act, and without authority was preventing the complainant from using the shore and water in front of his lands. This right he had by virtue of the wharf act beyond dispute; and the only question there was, whether the particular par-

M *

cel of land under water was in front of the complainant or the defendant. In this case, if the grant of the right to run the railroad *along* the river means upon the shore, or within the boundaries of the river, which was not disputed on the argument, the state have, by this grant, taken to that extent from the shore owner the right granted by the wharf act, unless that act confers a vested right of property. The only object of the defendant in *Stockham* v. *Browning,* was to claim his right to the line on which he drove his piles, and no public or even private improvement or enterprise was delayed by the injunction. And if the decision in that case contravenes the present, it is because it was made under the same views which governed this court in the Morris and Essex railroad cases, and which have been determined to be erroneous.

In the present case, for anything that is alleged or proved, the complainant may have sufficient access to his lands by a road in the rear, or on the side, as in Prudden's case; it does not appear that he is cut off from such access. And if his claim to the shore is vested, and it is reclaimed and filled in by the defendants, he may recover it in ejectment, certainly not diminished in value by being filled in to the width of the track; and then the defendants will be compelled to take the land by condemnation, and pay the value and the damages. And when his title is settled at law, this court will have power to protect him, if his legal remedy is not sufficient.

On both grounds, the injunction applied for must be refused, but without costs. The application was no doubt made in good faith; the complainant may have been misled by the decision of this court, in Stockham's case, the late judgment of the Court of Appeals not being promulgated. Besides, in the cases last referred to, it is intimated that if a person having rights encourages another by acquiescence, although only passive (that is by not attempting to interfere), to expend money, on the assumption that such rights will not be asserted, he will not be permitted to assert them

in a court of equity to defeat the expectation of those who have expended money on the faith that such rights will not be exercised; and further, that such acquiescence, even for less than twenty years, will extinguish such rights by estoppel, not only to the extent to which they have been infringed, but to the full extent claimed and intended. It was not safe for the complainant to trust to anything to rebut such acquiescence, short of a suit in some court where the record might remain as enduring evidence that he did not acquiesce. And the only suit which could be brought before the actual expenditure of money, is the application for injunction.