EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.

---

GRANT VAN HORN, Appellee, v. CITY OF DES MOINES et al., Appellants.

**INJUNCTION:** Preliminary Writ—''Balance-of-Convenience'' Rule. A temporary writ of injunction which will wholly destroy the *status quo* of the parties is palpably improper. So held where, before the main cause was at issue, the court enjoined the holding of a franchise election, on the ground that the proceedings preliminary thereto were illegal.

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

JANUARY 26, 1922.

THIS is an appeal by the defendants from an order granting a temporary injunction. The one question for our consideration

is whether such temporary writ was improvidently granted.—
*Reversed.*

*William E. Miller, Henry H. Griffiths, Chauncey A.
Weaver, J. G. Gamble,* and *Ralph Read,* for appellants.

*H. W. Byers, J. G. Myerly,* and *M. J. Mulvaney,* for
appellee.

EVANS, J.—The plaintiff filed his petition on November 18,
1921. By such petition he challenged the validity of certain
proceedings had by the city council of the city of Des Moines,
looking to the granting of a street car franchise to the Des
Moines Street Railway Company. An ordinance had been
passed by the city council, wherein the proposed franchise was
set forth, and an election had been called for November 28,
1921, pursuant to the statute in such cases. Purported notice
of such election had been given. The prayer of the petition
was that all said proceedings should be declared invalid and
void, for want of power and jurisdiction in the city council
to enact the same. The prayer also included an application for
a temporary injunction to be issued forthwith, enjoining the
defendant and its city council from proceeding with such elec-
tion, and from any further proceeding under said ordinance,
known as Number 3147. The application for a temporary
injunction was set for hearing, and on November 26, 1921, was
sustained, and a temporary injunction ordered.

The case on its ultimate merits is a very important one,
but the question involved in this appeal is comparatively simple.
At the time of the hearing on the application for a temporary
writ, the main case was not at issue. The ultimate merits remain
untried. Though the ultimate merits have not been ignored by
respective counsel in their arguments here, there is no sugges-
tion of a stipulation that such merits be settled by decision at
this time. On the contrary, the plaintiff contends that the only
question before us is that of the propriety of the granting of
the temporary injunction. He is entitled to maintain this con-
tention, and we shall conform our opinion thereto. In view of
the narrow scope of the question thus presented, we prefer
neither to intimate nor to form any opinion as to the final

merits of the case.  We shall, therefore, consider the evidence presented at the hearing for a temporary writ only as such evidence bears upon the question:  Was the case presented an appropriate one for the issuance of a temporary injunction?  We are united in the view that it was not, and that the learned trial judge erred in this regard.

The rule which guides the discretion of the trial court in ordering or refusing a temporary writ of injunction is a very general one, and is of the very essence of equity.  Its dominant purpose is to so preserve the rights of the parties, pending the main litigation, that neither shall be despoiled of the fruit of his success upon the final merits.  The rule has had frequent enunciation.  We had it under consideration in *City of Ft. Dodge v. Ft. Dodge Tel. Co.*, 172 Iowa 638, 641, 642.  We there said:

"The purpose of a temporary writ is, ordinarily, to maintain the *status quo* of the parties and to so protect the subject of the litigation that the fruits thereof shall not be lost to the successful party.  The effect of the temporary writ in this case was not to maintain the *status quo,* but rather to destroy it with a stroke of the pen, without warning or hearing.  The effect of such temporary writ, if continued, would have been to work an irreparable injury to the defendant before it could reach a hearing on the merits of the controversy.  In determining whether a temporary writ of injunction shall issue, or whether it shall stand after issue, the court will look to the situation of both parties, the defendant as well as the plaintiff, and will exercise its power to issue or to dissolve with a view to the relative amount of injury to be suffered by the parties respectively.  When a temporary injunction will cause great injury to a defendant and be of comparatively little benefit to the plaintiff, it is a proper exercise of judicial discretion to refuse the writ. * * *

"In the case before us, we think that the conditions upon which the dissolution of the writ was ordered afforded full protection to the plaintiff.  The maintenance of the temporary writ could afford to the plaintiff no greater protection than it now has, so far as preserving the fruits of the litigation is concerned.  If the writ could work any further advantage to the plaintiff,

it would be only *the indirect advantage of inflicting irreparable injury upon the defendant,* pending litigation. This is only saying that the use of the writ to such end would be oppressive, and furnishes a reason for its dissolution, rather than its maintenance.''

The language above quoted has very pertinent application to the facts before us.

It appears that, for many weeks, the defendant city council had been negotiating with the Des Moines Street Railway upon the subject of a franchise, and that a tentative accord had finally been reached on a form of franchise to be submitted to a vote of the people. The city council purported to pass an appropriate ordinance, and purported to call an election for the purpose of voting on the same, and purported to give statutory notice of such election. Such preparatory proceedings necessarily required several weeks' time. Under the tentative arrangement between the city and the railway company, the latter was to pay the expense of the election, and did provide therefor. After these proceedings had been in progress for some weeks, the plaintiff filed his petition. This was ten days before the date of the election fixed in the published notices. The temporary writ was issued on Saturday, November 26th, whereas the date of the election fixed was Monday, November 28th. The plaintiff challenged the validity of the proceedings and of the proposed election upon two main grounds:

(1) That there was no power in the city council, either with or without a vote of the electors, to grant the proposed franchise, because of an existing franchise which had not been terminated and which could not be terminated by any action of the city council or of the electors.

(2) Because the purported notice published by the city council failed to conform to the requirements of the statute.

If the trial court had overruled plaintiff's application for a temporary injunction, wherein could the plaintiff's main case have suffered? Assuming the grounds of his challenge to be tenable, and that they should be established by a final decree upon the merits, they would be as effective after the election as before. That is to say, if the court should find, upon final decree, that the proceedings leading up to the election were

invalid on the grounds charged, the election could not validate them. Except these grounds of challenge in the petition, the brief for appellee does not suggest any reason for the issuance of a temporary writ, as distinguished from a permanent one. Indeed, the order granting the temporary writ took the form of a decree, and was based upon an express finding sustaining these grounds of challenge to the validity of the proceedings. Such finding purported to adjudicate to that extent the final merits of the main case, before it had been tried or put at issue.

On the other hand, the issuance of the temporary injunction was literally destructive of the fruit of a successful defense. The proceedings already had by the city council, even if later sustained by a final decree, could avail nothing if the election and subsequent proceedings pursuant thereto were prevented by temporary injunction. By the obtaining of a temporary injunction, the plaintiff had fully won his case, in a practical sense. No motive was left to him to pursue the main case further. If the temporary injunction had been kept in force until November 28th, the plaintiff could have safely dismissed his main case thereafter. Such a result is repellent to the equitable purpose of a temporary injunction. Its function is not to throw a "monkey wrench" into the moving machinery of either party. Nor should it, in any event, be issued in favor of either party, except for the purpose of preserving in pending litigation some right which would otherwise be irreparably lost.

From the order granting the temporary writ an appeal to this court was immediately taken. Upon application to Justice Stevens, a restraining order was issued by him, suspending the operation of the temporary writ so as to permit the holding of the election, without other prejudice to either party. The temporary writ still operates to enjoin further proceedings subsequent to the election. It seems to be conceded in argument that the election of November 28th resulted in favor of the proposed franchise. In order to make such election effective, certain further statutory proceedings are required within a period of 60 days. These proceedings are still under the restraint of the writ.

The restraining order issued by Justice Stevens is now

confirmed, and the order below granting the temporary writ of injunction is wholly—*Reversed.*

STEVENS, C. J., WEAVER, PRESTON, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.