KENT PRODUCTS, INC., et al., appellees, v. LEO A. HOEGH, Attorney General of State of Iowa, et al., appellants.

No. 48392.

(Reported in 61 N.W.2d 711)

DECEMBER 15, 1953.

Leo A. Hoegh, Attorney General, Clarence A. Kading, First Assistant Attorney General, Earle S. Smith, Special Assistant Attorney General, and Clyde E. Herring, County Attorney, for appellants.

Evans, Duncan, Jones, Hughes & Riley, of Des Moines, for appellees.

GARFIELD, J.—Prior to July 4, 1953, sale of colored oleomargarine in Iowa was prohibited by statute. Sections 190.6, 191.2, subsection 3, Code, 1950. Chapter 97, Acts of the Fifty-fifth General Assembly, effective on said date, permits the sale of colored oleomargarine (we will call it "margarine") upon compliance with certain specified conditions. This requirement of section 3, chapter 97, is the subject of this controversy: "There shall be four readily legible imprints made by the manufacturer of the

word 'oleo' on the product equally distributed on one of the greater sides of each one-quarter pound, one-half pound, or pound."

Section 3, chapter 97, states, immediately preceding the above quoted "imprint provision": "3. No person shall sell or offer for sale, colored oleo, oleomargarine or margarine unless —such oleo, oleomargarine or margarine is packaged; the net weight of the contents of any package sold in a retail establishment is one pound or less; there appears on the label of the package the word 'oleo', 'oleomargarine' or 'margarine' in type or lettering at least as large as any other type or lettering on such label, and a full and accurate statement of all the ingredients contained in such oleo, oleomargarine or margarine; and each part of the contents of the package is contained in a wrapper which bears the word 'oleo', 'oleomargarine' or 'margarine' in type or lettering not smaller than 20-point type."

Other parts of section 3, following the imprint provision, are: "* * * Whenever coloring of any kind has been added it shall be clearly stated on both inside wrapper and the outside package. The ingredients of oleo, oleomargarine or margarine shall be listed on both the inside wrapper and outside package in the order of the amounts of ingredients in the package. * * *

"Each one pound package of oleo, oleomargarine or margarine shall be approximately four and three-quarter inches by four and three-quarter inches in its greater dimensions commonly known as the 'Eastern pack'. * * *."

Code section 189.19 prescribes the penalty for violation of any provision of chapter 97 and other statutes—a fine of $10 to $100 or imprisonment in the county jail not over thirty days, and on a third conviction for the same offense the offender may be restrained from operating his place of business.

Plaintiff Kent Products, Inc., is a manufacturer of margarine in Kansas City. Plaintiff Skelton is a retail grocer in Des Moines. They brought this action in behalf of themselves and other manufacturers and retailers of colored margarine against the Attorney General and Secretary of Agriculture of Iowa and the County Attorney of Polk County to enjoin enforcement of the imprint provision of the Act quoted first above.

In Count I of the petition plaintiff Kent Products alleges the imprint provision is arbitrary, unnecessary, unreasonable and an unwarranted interference with a lawful business, depriving it and other manufacturers of property rights of great value, in violation of due process and equal protection clauses of the State and Federal Constitutions (sections 9 and 6, Article I, Iowa Constitution, section 1, 14th Amendment to U. S. Constitution). Kent Products also alleges the imprint provision constitutes an undue burden on interstate commerce in violation of the commerce clause (section 8, Article I) of the Federal Constitution.

In Count II of the petition plaintiff Skelton asks a declaratory judgment that the Act does not subject anyone other than a manufacturer to prosecution and penalty if margarine is not imprinted with the word "oleo." Skelton alleges defendants have interpreted the Act to subject retailers to prosecution and penalty if colored margarine is found on their shelves not imprinted as required by section 3. That as so interpreted the Act is unconstitutional because the language is vague, indefinite, unreasonable, oppressive, and subjects retailers to prosecution and loss of business as a result of climate, nature of margarine and other conditions beyond their control. Skelton asks that enforcement of the imprint provision be enjoined if the Act is construed as subjecting retailers to a penalty.

Defendants filed written resistance to the prayers for temporary injunction stating the grounds of unconstitutionality alleged in the petition are inadequate to warrant such relief, a temporary injunction would not maintain the status quo since sale of colored margarine was prohibited prior to July 4, 1953, the alleged injuries to manufacturers are mere conjecture since they have been limited to sales of uncolored margarine in the past, many manufacturers have already manufactured margarine bearing acceptable imprints of the word "oleo" which is available to the retail trade, granting a temporary injunction would do greater injury than would result from its refusal.

Following a hearing July 2, 1953, on the application in the petition for a temporary injunction against enforcement of the imprint provision (quoted above) such relief was granted on July 6. Pursuant to rule 332(a), Rules of Civil Procedure, we

granted defendants an appeal from this interlocutory order. (See Wolf v. Lutheran Mutual Life Ins. Co., 236 Iowa 334, 344, 18 N.W.2d 804, 810.)

At the hearing on July 2, Mr. Kent, president of plaintiff company, testified in substance that its sole business is manufacturing margarine, it is in the lower third of the industry in size, it has no office or agents in Iowa, it sold uncolored margarine in Kansas City to wholesalers who in turn sold to stores in Iowa, his company would like to enter the Iowa market for colored margarine as Iowa is within its natural trade territory, the manufacturer of its packaging machines which supplies such machines for ninety per cent of the margarine throughout the country "advised us they cannot supply a machine to make a satisfactory imprint", margarine is soft when the imprint would have to be made and there is no assurance it would stay in the product if made, his company and other smaller manufacturers have no elaborate machine shops and are dependent upon the advice of the packaging machine people, he has read and been told that some large manufacturers which have their own machine shops were ready to comply with the law, it would take time and special handling to segregate margarine for ultimate sale in Iowa if it had to be imprinted, normally margarine is without refrigeration part of the time before it reaches the consumer and that would add to the danger the imprint would be obliterated, he knows of no other state where such imprint is required, his company will lose what business it has in Iowa and be prevented from taking on any new business if the margarine must be imprinted, the large companies which have been able to comply with the requirement would then get established in Iowa and it would be hard for anyone else to get any of the market.

Plaintiffs offered no other evidence. Two representatives of wholesale groceries in Des Moines testified for defendants. One said his company deals in two brands of colored margarine, the other testified his company handles five brands. A package of each of the seven brands, taken from regular stock, was brought to court in insulated containers and produced. The sample of one of the brands did not have an imprint that was legible and per-

haps no imprint had been attempted on it. The imprints on the package of another brand were indistinct. Some of the other imprints were not entirely clear. The imprints on some of the packages were plain, however. On cross-examination the first of these witnesses said ninety per cent of shipments of margarine by his company were not under refrigeration. The second witness testified probably about half the trucks carrying margarine from his company were not refrigerated, nothing printed on the outer packages of the five brands his company handled states they should be refrigerated and he would not think continuous refrigeration is necessary to preserve the eating qualities of margarine.

The chief of the dairy and food division of the State Department of Agriculture said that originally manufacturers' representatives objected to the imprint provision on the ground they did not think compliance would be possible, later two such representatives told him it would be possible for them to make a satisfactory imprint.

The above is a sufficient summary of the evidence.

The issuance or refusal of a temporary injunction rests largely in the sound discretion of the trial court, dependent upon the circumstances of the particular case. We will not interfere with such a ruling unless there is an abuse of such discretion or a violation of some principle of equity. Wood Brothers Thresher Company v. Eicher, 231 Iowa 550, 559, 1 N.W.2d 655, 660, and citations; 43 C.J.S., Injunctions, section 14; 28 Am. Jur., Injunctions, sections 35, 36, 328. We think there was an abuse of discretion here.

We have approved this statement from Bonaparte v. Camden & A. R. Co., Baldwin 205, 3 Fed. Case No. 1617, page 821, at 827, "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction; * * *." Beidenkopf v. Des Moines Life Ins. Co., 160 Iowa 629, 639, 142 N.W. 434, 46 L.R.A., N.S., 290; Ontjes v. Bagley, 217 Iowa 1200, 1206, 250 N.W. 17; Wood Brothers Thresher Company v. Eicher, supra, 231 Iowa 550, 559, 1 N.W.2d 655, 660. See also 43 C. J. S., Injunctions, section 15, which states a similar rule has been applied more frequently in cases of temporary injunctions.

212

■ The Beidenkopf, Ontjes and Wood Brothers Thresher Company cases, all supra, also quote this with approval from Stevens v. Paterson & Newark R. Co., 20 N.J. Eq. 126: "An injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law about which there may be doubts, which has not been settled by the * * * law of this state." To like effect are 43 C. J. S., Injunctions, section 19c(2) (c), page 434; 28 Am. Jur., Injunctions, section 14, page 208; High on Injunctions, Fourth Ed., section 8.

Snouffer & Ford v. City of Tipton, 161 Iowa 223, 230, 142 N.W. 97, 100, L. R. A. 1915B 173, states, "* * * courts * * * should exercise great care in granting temporary writs of injunction against the usual and ordinary processes of the law."

■ 43 C. J. S., Injunctions, section 108c, page 619, says: "Preliminary restraint against public officers should not be ordered unless on the pressure of urgent necessity, and ordinarily a temporary injunction against public officers will be refused where plaintiff's right to an injunction is doubtful or is based on facts determinable only by trial."

28 Am. Jur., Injunctions, section 181, page 369, states: "* * * in observance of the rule that courts will not, except under extraordinary circumstances, interfere with the duties of other departments of the government, equity will not ordinarily interfere with the action of public officers taken under statutory authorization. The power thus to arrest the hand of an officer as he is about to carry out the command of the legislature is to be exercised with a wisdom and discretion commensurate with its greatness; no trivial grounds will be sufficient to authorize the granting of such extraordinary relief."

It has been said in a case somewhat like this: "But it will not do to make of the courts, by equitable interference, a sort of superior upper house to consider and pass * * * upon legislative enactments * * *." Wadhams Oil Co. v. Tracy, 141 Wis. 150, 156, 123 N.W. 785, 787, 18 Ann. Cas. 779. The statement is repeated in State ex rel. Bolens v. Frear, 148 Wis. 456, 478, 134 N.W. 673, 679, 135 N.W. 164, L. R. A. 1915B 569, 606, Ann. Cas. 1913A 1147, 1154.

█ Ordinarily equity declines to interfere with the administration of criminal or quasi-criminal laws. One ground for this is that the claimed invalidity of the statute may be urged in defense to a charge of violation of the law. Mart & Son v. City of Grinnell, 194 Iowa 499, 501, 502, 187 N.W. 471; Snouffer & Ford v. City of Tipton, supra, 161 Iowa 223, 231, 142 N.W. 97, L. R. A. 1915B 173; Home Savings & Tr. Co. v. Hicks, 116 Iowa 114, 118, 89 N.W. 103; Ewing v. Webster City, 103 Iowa 226, 229, 230, 72 N.W. 511; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49, 61 S. Ct. 418, 420, 85 L. Ed. 577, 579; 43 C. J. S., Injunctions, section 156; 28 Am. Jur., Injunctions, section 183.

█ Unconstitutionality or other invalidity of such legislation is not a ground for enjoining its enforcement. Home Savings & Tr. Co. v. Hicks, supra, 116 Iowa 114, 118, 89 N.W. 103; Terrace v. Thompson, 263 U. S. 197, 214, 44 S. Ct. 15, 68 L. Ed. 255, 274; Spielman Motor Sales Co. v. Dodge, 295 U. S. 89, 95, 55 S. Ct. 678, 79 L. Ed. 1322, 1326 (Hughes, C.J.); Watson v. Buck, 313 U. S. 387, 400, 61 S. Ct. 962, 85 L. Ed. 1416, 1423; 43 C. J. S., Injunctions, section 119, page 653; 28 Am. Jur., Injunctions, section 182.

Injunctions have been granted against enforcement of legislation claimed to be unconstitutional or otherwise invalid where enforcement would result in a direct invasion of property rights or irreparable injury and there is no complete and adequate remedy at law. In such cases equity acts to protect property rights from threatened irreparable and unlawful injury. See Craven v. Bierring, 222 Iowa 613, 629, 630, 269 N.W. 801, and citations; Cook v. Davis, 218 Iowa 335, 337, 252 N.W. 754, and citations; 43 C. J. S., Injunctions, section 158; 28 Am. Jur., Injunctions, sections 182, 183; High on Injunctions, Fourth Ed., section 68.

█ Plaintiffs strongly rely upon the authorities last cited and some others to like effect. They are not fairly applicable here. It is doubtless true that compliance with the challenged imprint provision of chapter 97 would involve expense and inconvenience and perhaps other consequences. But this would not be such an invasion of property rights or irreparable injury as equity should protect by the drastic remedy of a temporary in-

junction against enforcement of a statute, under the showing made here.

Plaintiffs have no legally established property right in the manufacture or sale of colored margarine in Iowa except upon the conditions specified in chapter 97. Until this Act took effect they were limited to the manufacture and sale in Iowa of uncolored margarine. Their right to continue to manufacture and sell uncolored margarine here is not infringed by chapter 97. See in this connection City of Miami v. Sutton, 5th C. C. A., 181 F.2d 644, 648. Plaintiffs are in this position: they claim the right under chapter 97 to manufacture and sell colored margarine in Iowa while they deny the power of the state to prescribe one of the conditions the chapter imposes upon such manufacture and sale although the claimed invalidity of the condition has not been established.

To affirm the trial court's order would require us to ignore the true purpose of a temporary injunction. It is to a great extent a preventive remedy to maintain the status quo of the parties and so to protect the subject of the litigation that the fruits thereof shall not be lost to the successful party. See Van Horn v. City of Des Moines, 192 Iowa 1313, 1315, 186 N.W. 193; City of Fort Dodge v. Fort Dodge Tel. Co., 172 Iowa 638, 641, 154 N.W. 914; Snouffer & Ford v. City of Tipton, supra, 161 Iowa 223, 230, 142 N.W. 97, L. R. A. 1915B 173; 43 C. J. S., Injunctions, section 2; 28 Am. Jur., Injunctions, section 12; High on Injunctions, Fourth Ed., sections 4 and 5a.

The status quo which will be preserved by a temporary injunction is the last, actual, peaceable, noncontested status which preceded the pending controversy. Steggles v. National Discount Corp., 326 Mich. 44, 39 N.W.2d 237, 240, 15 A. L. R.2d 208; 43 C. J. S., Injunctions, section 17, page 428; High on Injunctions, Fourth Ed., section 5a. It is clear the status of plaintiffs was as manufacturer and seller of uncolored margarine.

This injunction does not preserve any legally established status quo of the parties but disturbs it. Plaintiffs are not seeking the protection of any established right. In effect they seek to acquire by temporary injunction a right they have never enjoyed—to manufacture and sell colored margarine in Iowa free

from one of the conditions prescribed by chapter 97 under which this may be done. In operation any temporary injunction is somewhat like judgment and execution before trial. See Beidenkopf v. Des Moines Life Ins. Co., supra, 160 Iowa 629, 639, 142 N.W. 434, 46 L. R. A., N.S., 290; 28 Am. Jur., Injunctions, section 12, page 205. This injunction seems especially so.

We have carefully considered the authorities cited by plaintiffs and many others. No authority is called to our attention which we think supports the trial court's order. No Iowa decision is cited which upholds a temporary injunction against enforcement of a statute of this state. Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N.W. 324, 27 L. R. A., N.S., 1150, holds it was error to dissolve a temporary writ against enforcement of a city ordinance providing for licensing and regulating sale of milk in the city, where there was no statutory authority for such an ordinance and its enforcement might mean the destruction of an established business. The Bear opinion, however, considers and adjudicates the invalidity of the ordinance. Here the claimed invalidity of the imprint provision of chapter 97 is yet to be established.

Plaintiffs also cite Dobbins v. Los Angeles, 195 U.S. 223, 25 S. Ct. 18, 49 L. Ed. 169 (from which Huston v. City of Des Moines, 176 Iowa 455, 465, 156 N.W. 883, quotes), and some other decisions of the Supreme Court of the United States. None of them is contrary to the conclusion we reach. In the Dobbins case plaintiff had acquired valuable property rights which would be destroyed by the enforcement of a city ordinance alleged to have been arbitrarily enacted in an attempt to protect another in the enjoyment of a monopoly. The high court held the city's demurrer to the petition should have been overruled.

Although plaintiffs' position in the matter is not entirely clear to us, they apparently seek to uphold the trial court's order partly on the alleged ground it was necessary in order to avoid a multiplicity of criminal prosecutions for violation of the imprint provision of chapter 97. But the order cannot be upheld on this ground. It is not shown defendant state officers will engage in needless, oppressive or vexatious prosecutions. All that appears is that they will attempt to do their duty in the way of enforcing the imprint provision.

Except perhaps under unusual circumstances not present here equity will not enjoin a criminal or quasi-criminal prosecution under a statute claimed to be invalid except for the protection of civil or property rights where there is no adequate remedy at law. Where irreparable injury to a civil or property right is involved and there is no adequate remedy at law equity will intervene more readily if a multiplicity of prosecutions is threatened. Plaintiffs claim here their property rights will be invaded by the enforcement of the challenged provision. We have held there is no such invasion as warranted the temporary writ. Possibility of numerous prosecutions is not in itself sufficient ground for issuing this writ under the circumstances here.

28 Am. Jur., Injunctions, section 236, states: "While the prevention of a multiplicity of suits furnishes a well-recognized basis for the assumption and exercise of the power of equity to restrain acts injurious to property and civil rights, as a general rule, equity will not intervene to enjoin criminal prosecutions merely upon the ground of the prevention of a multiplicity of actions." See also Douglas v. City of Jeannette, 319 U.S. 157, 164, 165, 63 S. Ct. 877, 87 L. Ed. 1324, 1329, 1330 (Stone, C.J.); Watson v. Buck, supra, 313 U.S. 387, 400, 401, 61 S. Ct. 962, 85 L. Ed. 1416, 1423.

The trial court's ruling recited at the outset "it would seem premature to make any findings of fact" and later, "Certain evidence was submitted at the hearing and, while it would be premature and improper to make any final findings of fact based on that evidence, it may be proper tentatively to say that the evidence tended to show"—(here follow 15 numbered statements). Because defendants' brief does not specifically challenge these tentative findings plaintiffs argue they must be accepted as verities. Reliance is placed on the rule that "Errors or propositions not stated or argued shall be deemed waived." Rule 344(a) (4) (Third), Rules of Civil Procedure. We have many times applied this rule in a proper case. Livingston v. Davis, 243 Iowa 21, 24, 25, 50 N.W.2d 592, 595, 27 A. L. R.2d 1237, and citations.

We think defendants were not bound on this appeal to challenge specifically each of the trial court's tentative findings.

Incidentally, unlike rule 52(a) of the Federal Rules of Civil Procedure (see Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S. Ct. 517, 84 L. Ed. 774, 779), our rules do not specifically require findings of fact in granting or refusing a temporary injunction.

Defendants' "Proposition Relied Upon for Reversal" is that the trial court erred in granting the temporary injunction in that the record does not reveal any recognized basis for equity interference. This is followed by their brief point for which authorities are cited, "The validity of a criminal statute will not be tested, nor its enforcement enjoined by a court of equity, unless the party seeking such relief, in addition to his attack on its validity, clearly shows some recognized ground for equitable interference."

The issue upon this appeal is the propriety of granting the temporary writ under the circumstances of the case. The evidence at the hearing is before us. It is proper for us to consider it in determining whether an appropriate case was presented for the issuance of the injunction. See Van Horn v. City of Des Moines, supra, 192 Iowa 1313, 1314, 1315, 186 N.W. 193. We are not confined to a consideration of the tentative findings.

We express no opinion as to the final merits of the case.

The order and decree allowing the temporary injunction is— Reversed.

All JUSTICES concur.