**IOWA STATE DEPARTMENT OF HEALTH and Norman Pawlewski, Commissioner, Appellants,**

**Polk County ex rel. Dan L. Johnston, Intervenor-Appellant,**

v.

**Edward J. HERTKO, Ronald R. Grooters, Hooshang Soltanzadeh, M.D.'s, and Iowa Methodist Medical Center, Appellees.**

**IOWA HEALTH SYSTEMS AGENCY, INC., Appellant,**

**Polk County ex rel. Dan L. Johnston, Intervenor-Appellant,**

v.

**IOWA METHODIST MEDICAL CENTER, Appellee.**

**Edward J. HERTKO, Ronald K. Grooters, Hooshang Soltanzadeh, M.D.'s and Iowa Methodist Medical Center, Appellees,**

v.

**HEALTH SYSTEMS AGENCY, INC., Iowa State Department of Health and Norman Pawlewski, Appellants.**

No. 62887.

Supreme Court of Iowa.

Aug. 29, 1979.

Thomas J. Miller, Atty. Gen., Larry M. Blumberg, Fred M. Haskins and Sara K. Johnson, Asst. Attys. Gen., for appellants Iowa Department of Health and Norman Pawlewski.

Robert F. Holz, Jr. and Edwin N. McIntosh, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant Iowa Health Systems Agency, Inc.

Dan L. Johnston, Polk County Atty., and E. LaVon French, Asst. County Atty., for intervenor-appellant Polk County.

Edgar H. Bittle, of Belin, Harris, Helmick & Lovrien, Des Moines, for appellee Iowa Methodist Medical Center.

Michael H. Figenshaw and Marsha K. Ternus, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees Edward J. Hertko, Ronald K. Grooters and Hooshang Soltanzadeh, M.D.'s.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, McCORMICK and McGIVERIN, JJ.

McGIVERIN, Justice.

These three consolidated cases involve questions arising from attempted enforcement of the Iowa Certificate of Need Law, sections 135.61–.83, The Code 1979. Appellants Iowa State Department of Health (ISDH) and Iowa Health System Agency, Inc. (HSA) appeal from adverse trial court judgments in two injunction actions by which they sought to prevent performance of open heart surgery at Iowa Methodist Medical Center (Methodist) in Des Moines until Methodist complied with the Certificate of Need Law. ISDH and HSA also claim the court erred in ruling in a separate declaratory judgment action by Methodist and three of its doctors that the Certificate of Need Law requirements do not apply to performance of open heart surgery at Methodist. Intervenor-appellant Polk County appeals from dismissal of its petitions of intervention on the side of ISDH and HSA in the two injunction actions. We affirm in part, reverse in part and remand.

The following main issues are presented for our review by the parties:

1. Whether the court properly denied the temporary injunction sought by ISDH and HSA against open heart surgery at the hospital;

2. Whether the court erred in disposing of the three cases on their merits by ruling on motions of Methodist and its doctors without granting appellants a hearing on the motions or a trial;

3. Whether the court erred in dismissing Polk County's petitions for intervention in the two injunction actions; and

4. Whether the court erred in denying the motion by HSA for discovery from Methodist.

These cases arose as July 1, 1978, the effective date of the Iowa Certificate of Need Law, drew near.

The Preamble to the 1977 Iowa Acts, Chapter 75, stated the policy of sections 135.61–.83 is, *inter alia,* to provide "necessary and adequate institutional health services to all the people of this state while avoiding unnecessary duplication of institutional health services and preventing or controlling increases in the cost of delivering these services."

Section 135.63(1) provided that a "new institutional health service" or "changed institutional health service" shall not be offered or developed in this state without proper application to the Iowa State Department of Health for and receipt of a certificate of need for such new service.

However, an institutional health facility, such as Methodist, would not need to obtain a certificate of need unless it was providing a new or changed institutional health service as defined in section 135.61(19)(e), which provides:

19. "New institutional health service" or "changed institutional health service" means any of the following:

. . . . .

e. Health services which are or will be offered in or through an institutional health facility or a health maintenance organization at a specific time but which were not offered on a regular basis in or through that institutional health facility or health maintenance organization within the twelve month period prior to that time.

In April 1978 Methodist advised ISDH of its intention to perform open heart surgery at its hospital. The question arose as to whether Methodist needed to apply to ISDH for a certificate of need before performing the surgery. ISDH is charged by the statutes with making a review and recommendation on each application for a new institutional health service to a five person state health facilities council, which makes the final decision on the application. Sections 135.62–.69, The Code 1979.

HSA is an Iowa non-profit corporation established pursuant to United States Public Law 93–641 (42 U.S.C. § 300*l*). Among its duties in serving its health service area in Iowa is to restrain increases in the cost of providing health services and to prevent unnecessary duplication of health resources. HSA also makes recommendations to the ISDH as to whether a certificate of need should be granted to an applicant.

Sanctions for not complying with this law appear in section 135.73.

As July 1, 1978 approached, Methodist took the position it was not required to apply for a certificate of need. ISDH and HSA believed otherwise.

Within a one week period three suits were filed. On June 29, 1978 HSA petitioned for temporary and permanent injunctions to prevent Methodist from performing open heart surgeries until Methodist obtained a certificate of need. This petition was based on alternative grounds of promissory estoppel and the Certificate of Need Law. HSA alleged it was an "interested person" for the purposes of section 135.73(2).

On June 30 Doctors Hertko, Grooters and Soltanzadeh (Doctors) and Methodist filed a declaratory judgment petition at law against ISDH and HSA seeking a determination that the Certificate of Need Law had no application to open heart surgery performed at Methodist.

On July 5 ISDH filed a petition against the Doctors and Methodist seeking temporary and permanent injunctions against open heart surgery at Methodist until Methodist received a certificate of need.

On July 17, the three cases were consolidated by agreement of the parties and the court for determination of common issues. On that date hearing was held on the application by ISDH and HSA for temporary injunctions under the Iowa Certificate of Need Law. On July 18 the court denied the application.

On November 16 the court entered judgment against ISDH and HSA in all three cases. That ruling will be discussed later.

At present we will consider only the claim by ISDH and HSA that the temporary injunction should have been granted.

I. *Was the temporary injunction properly denied?* During the temporary injunction hearing the parties stipulated: That Doctors Grooters and Soltanzadeh performed open heart surgery at Methodist on June 19, 20, 21, 22, 26, 27, 28 and 29, 1978; that those doctors had been performing open heart surgery at Mercy Hospital in Des Moines for approximately the past eighteen months; and that no heart surgery was performed or offered at Methodist from at least July 1, 1977 to June 19, 1978. Correspondence stating the positions of the parties also was placed in the record.

Methodist had submitted and then withdrew an application for review of its open heart surgery program by ISDH. Methodist has not received a certificate of need for its program.

In seeking the temporary injunction ISDH and HSA relied on Iowa R.Civ.P. 321(c) which states a temporary injunction may be allowed in any case specially authorized by statute. They then point to section 135.73(2) which provides:

Any party offering or developing any new institutional health service or changed institutional health service without first obtaining a certificate of need therefor as required by this division may be temporarily or permanently restrained therefrom by any court of competent jurisdiction in any action brought by the state, any of its political subdivisions, or any other interested person.

The court denied the temporary injunction and stated the legal question presented is whether the performance of the eight open heart surgeries at Methodist in June of 1978 constituted a health service which was offered on a regular basis in or through Methodist within twelve months prior to July 1, 1978.

Relative to section 135.61(19)(e), the court defined "regular" as "recurring at fixed times", "periodic". It defined "within" as "inside the limits of." The court concluded that heart surgery was performed on a regular basis at Methodist within the twelve month period prior to July 1, 1978; therefore, open heart surgery is not a "new institutional health service"; the Certificate of Need Law does not apply to this surgery at Methodist; and there is no statutory basis for injunctive relief.

The count of the HSA petition seeking temporary and permanent injunctions based

on promissory estoppel, claiming Methodist had promised in writing in 1975 to comply with established review procedures in the future, was excepted from the consolidation of cases and was not before the court at the temporary injunction hearing on July 17. We will give further attention to this count later.

■ The quest of ISDH and HSA for a temporary injunction is in equity and the scope of our review is de novo. Iowa R.App.P. 4.

■ In determining whether the court erred in refusing to grant a temporary injunction under section 135.73(2), several considerations are necessary. We first note the statute states that the court "may" grant a temporary restraint. There is no requirement that the court shall grant an injunction.

Next, in deciding whether section 135.-73(2) applies, it is necessary to determine whether the open heart surgeries performed at Methodist during the last two weeks in June 1978 constitute a "new institutional health service" or a "changed institutional health service," as those terms are defined in section 135.61(19)(e).

The inquiry under section 135.61(19)(e) focuses on whether the open heart surgery was offered "or will be offered . . . at a specific time but which [was] not offered on a *regular basis* in or through [Methodist] *within* the twelve month period prior to that time."

The first day upon which that section could be applied was July 1, 1978. Therefore, for our purposes "that time" as used in section 135.61(19)(e) means July 1, 1978. Neither party disputes this interpretation of the statute.

The consideration of the applicability of the Iowa Certificate of Need Law, requires determination of two questions. First, what is the meaning of "offered on a *regular basis* in or through [Methodist] *within* the twelve-month period prior to [July 1, 1978]"? Second, was Methodist's open heart surgery "offered on a regular basis in or through [Methodist] within the twelve

month period prior to [July 1, 1978]," as the phrase may be defined?

The first question involves the interpretation of section 135.61(19)(e), in particular the definitions of *regular basis* and *within.* "Interpretation of a statute is a question of law which must be determined by the judiciary. *Davenport Water Co. v. Iowa State Commerce Commission,* 190 N.W.2d 583, 592 (Iowa 1971); *Hanson v. Iowa State Commerce Commission,* 227 N.W.2d 157, 162 (Iowa 1975)." *West Des Moines Education Association v. PERB,* 266 N.W.2d 118, 124 (Iowa 1978).

The second question is one of ultimate fact. That involves application of the legal definition of *regular basis* and *within* to the facts of the case and determining whether the facts as found fit the legal definition.

This court must make an independent determination of the meaning of *regular basis* and *within* as used in section 135.-61(19)(e).

Sections 135.61–.83 were enacted pursuant to 42 C.F.R. § 123.402 (1977). The language of section 135.61(19)(e) is patterned after 42 C.F.R. § 123.404(a)(4) (1977), which defines *new institutional health services* by using the phrase "on a regular basis" but does not define regular basis. The Department of Health, Education, and Welfare stated "it is expected that [the phrase on a regular basis] will be given operational meaning by each state." 42 Fed.Reg. 4001, 4008 (1977). Obviously, this does not assist us in our definition.

Our research discloses that neither the Iowa Code nor the Iowa Administrative Code provides a definition of the terms *regular basis* or *within.* See §§ 135.61–.83, The Code; 470 I.A.C. §§ 202 and 203. In addition, the record does not show that the ISDH or HSA has attempted to define these terms. It is therefore necessary to consult additional sources to determine the meaning of these terms in the context of section 135.61(19)(e).

In *McSherry v. City of St. Paul,* 202 Minn. 102, 277 N.W. 541 (1938), the Supreme Court of Minnesota interpreted the

teachers' tenure law of Minnesota, Mason's Minn.St.1927, § 2935–1, which defined *teacher* to mean "every person *regularly employed*, as a principal, or to give instructions in a classroom, or to superintend or supervise classroom instruction, or as placement teacher and visiting teacher." (emphasis added). The court construed "regularly employed" to include a substitute teacher. In doing so, the court looked to the entire act, its legislative mandate and the policy behind the statute. 202 Minn. at 109, 277 N.W. at 544–45.

Another court, when faced with determining whether the monies received under the Federal Work-Study Program were a grant under the provisions of 45 C.F.R. § 233.20(a)(3)(iv)(b),[1] interpreted the federal regulation in light of the Congressional purpose of aiding needy persons in enacting the categorical assistance program and the Work-Study Program. The court held that monies received under a Work-Study Program were not monies earned on "a regular basis" and "actually available for current use," and therefore not a "grant" under 45 C.F.R. § 233.20(a)(3)(ii)(c). *Brown v. Bates,* 363 F.Supp. 897, 901 (N.D.Ohio 1973).

It is therefore necessary for this court to look again to the purpose and policy of sections 135.61–.83 previously stated when determining what is meant by the term "regular basis."

▮ In light of the preamble to sections 135.61–.83 we believe the court erred in limiting the definition of *regular basis* to "recurring at fixed times," "periodic." The legislature was concerned with avoiding unnecessary duplication of services and with seeing that new services be *necessary* and *adequate* to serve the people of Iowa in order to protect the right of the people to health care. Restricting the meaning of regular basis to one of timing would be contrary to the legislative intent.

A more desirable interpretation of the statute would lead to defining *regular* in

much the same way we did in *Iowa-Illinois Gas & Electric Co. v. City of Bettendorf,* 241 Iowa 358, 364, 41 N.W.2d 1, 5 (1950). In that case we said: "The term 'regular' is a term of common understanding. Webster's International Dictionary defines it as meaning 'constituted', 'selected', and 'conducted', 'duly authorized or constituted.'" 241 Iowa at 364, 41 N.W.2d at 5. Within the same definition Webster's goes on to say that regular means "otherwise handled in conformity with established or prescribed usages, rules, or discipline . . . ." *Webster's Third New International Dictionary* 1913 (unabridged 1966).

Under section 135.61(19)(e), the new institutional health service must be offered on a *regular basis.* The trial court ignored the word "basis" in its determination of the meaning of the statute. The use of the word *basis* indicates that the drafters of the statute did not intend the term "regular" to be defined solely in terms of timing. In the context of the statute, *basis* has an equally common understanding. *Webster's Third New International Dictionary* 182 (unabridged 1966), defines *basis* as: "The principal component[s] of anything," the "fundamental ingredient[s]", or "foundation." *See State v. Kansas City & Memphis Railway & Bridge Company,* 106 Ark. 248, 252, 153 S.W. 614, 616 (1913).

In light of the meanings given to the terms *regular* and *basis* we believe it is necessary to look to the *totality* of the service being offered and consider the following when determining whether a particular service was offered on a regular basis within the meaning of section 135.61(19)(e): the length of time the service has been offered; the recurrence of the service; the variations in the service; and its conformance to standards, customs or usages in the profession.

In *Jensen v. Nelson,* 236 Iowa 569, 19 N.W.2d 596 (1945) we said in relation to the definition of the word "within":

---

1. 45 C.F.R. § 233.20(a)(3)(ii)(c) provides:

   Provided that, in establishing financial eligibility and the amount of assistance payment: . . . only such net income as is

actually available for current use on a regular basis will be considered, and only currently available resources will be considered.

In fixing time, this word is fairly susceptible of different meanings. [citation]. It may be taken to fix both the beginning and end of the period of time in which a specified act must be done. In this sense "within" means "during."

However, "within" frequently means "not beyond, not later than, any time before, before the expiration of." In this sense "within" fixes the end but not the beginning of the period of time.

236 Iowa at 572, 19 N.W.2d at 598.

■ In the context of section 135.-61(19)(e) the term *within* is particularly susceptible to being defined as *during*. It is only necessary that the service be offered on a regular basis during the time period contemplated by the statute.

It is not necessary for us to determine whether the trial court erred in applying the definitions of *regular basis* and *within* to the particular facts of this case. Whether the open heart surgery offered at Methodist in June 1978 was "on a regular basis . . . within the twelve month period prior to . . . " July 1, 1978, is a question of ultimate fact to be determined anew on remand in light of this opinion once the record is fully developed.

The issue before us involves the propriety of the trial court's refusal to grant a temporary injunction. At the time of the hearing the meaning of section 135.61(19)(e), in particular the meaning of *regular basis* and *within* as used in the statute, and the applicability of section 135.73(2) to the present case were not clear. We are considering these statutes for the first time.

■ The trial court has discretion to grant or withhold a temporary injunction and we are reluctant to reverse the refusal thereof. *Iowa City v. Muscatine Development Company*, 258 Iowa 1024, 1033, 141 N.W.2d 585, 591 (1966). "An application for a temporary injunction is addressed to the discretion of the trial court and not to the discretion of the appellate court . . . .." *Mesabi Iron Company v. Reserve Mining Company*, 270 F.2d 567, 570 (8th Cir. 1959).

In *Kent Products v. Hoeph*, 245 Iowa 205, 61 N.W.2d 711 (1953) we said:

The issuance or refusal of a temporary injunction rests largely in the sound discretion of the trial court, dependent upon the circumstances of the particular case. We will not interfere with such a ruling unless there is an abuse of such discretion or a violation of some principle of equity.

. . .

We have approved this statement from *Bonaparte v. Camden & A. R. Co.*, Baldwin 205, 3 Fed. Case No. 1617, page 821, at 827, "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction; * * *." *Beidenkopf v. Des Moines Life Ins. Co.*, 160 Iowa 629, 639, 142 N.W. 434, 46 L.R.A.,N.S., 290; *Ontjes v. Bagley*, 217 Iowa 1200, 1206, 250 N.W. 17; *Wood Brothers Thresher Company v. Eicher*, supra, 231 Iowa 550, 559, 1 N.W.2d 655, 660. See also 43 C. J. S., Injunctions, section 15, which states a similar rule has been applied more frequently in cases of temporary injunctions.

The *Beidenkopf, Ontjes* and *Wood Brothers Thresher Company* cases, all supra, also quote this with approval from *Stevens v. Paterson & Newark R. Co.*, 20 N.J. Eq. 126: "An injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law about which there may be doubt, which has not been settled by the * * * law of this state."

245 Iowa at 211–12, 61 N.W.2d at 714–15.

The present cases involved a disputed question of law as well as a disputed question of ultimate fact. The question of law to be resolved was the meaning of section 135.61(19)(e). The question of ultimate fact involved the application of section 135.-61(19)(e), once defined, to the facts of this case. It is clear that the right of HSA and ISDH to a temporary injunction depended on the resolution of the disputed question of law.

■ Because the meaning of *regular basis* and *within* were disputed questions of law about which there was doubt at the time of the temporary injunction hearing, we hold that it was proper for the trial court in its discretion to deny the request by HSA and ISDH for a temporary injunction under section 135.73(2).

II. *Should the cases have been determined by ruling on motions on which hearing was not allowed?* Before discussing the next three issues, additional procedural background must be stated.

After ruling denying the temporary injunction, Polk County filed petitions of intervention in the two injunction actions on the side of ISDH and HSA.

All parties filed several pleadings and motions in the consolidated cases. ISDH and HSA answered the petition of Doctors and Methodist. HSA moved to enlarge and amend the court's findings and conclusions in the temporary injunction ruling.

Doctors and Methodist filed: a motion to dismiss the ISDH petition against them; a motion to adjudicate law points in the HSA injunction action; a motion for summary judgment in its declaratory judgment action; and motions to dismiss Polk County's petitions of intervention.

HSA filed a request for production of documents and a motion to compel discovery from Methodist, which was countered with a motion by Methodist for protective order from the discovery.

HSA also filed motions for extension of time to answer the motions of Methodist and Doctors until the court ruled on HSA's motion to enlarge and amend the temporary injunction ruling. Methodist was contending in its motions that the court's ruling on the temporary injunction, and conclusion that the Certificate of Need Law did not here apply to Methodist, was preclusive as to all other issues in these cases.

By agreement of the parties and the court, the court on September 22 was to hear and rule only on the motion of HSA to enlarge the temporary injunction denial ruling and several "procedural motions", such as two motions of HSA for extension of time to respond to Methodist's motions, and the motions between HSA and Methodist and Doctors relative to discovery.

The parties and court further agreed the remaining motions which they classified as "substantive motions" would be heard and considered by the court at a later time after ruling on HSA's motion to enlarge.

However, on November 16 the court, without further notice to the parties, hearing or evidence, ruled on all pending motions, including those not submitted on September 22 and which were specifically reserved for later hearing and ruling. The motion by HSA to enlarge was overruled.

The court overruled all motions of HSA and sustained all motions of Methodist and the Doctors. The result was dismissal of the injunction petitions of ISDH and HSA, a favorable judgment for Methodist and Doctors in the declaratory judgment action, and dismissal of Polk County's petitions of intervention.

The court renewed its view and prior conclusion in the temporary injunction ruling that the Iowa Certificate of Need Law had no application to open heart surgery performed at Methodist. The court further stated that: "Irrespective of what additional evidence may or could be produced in subsequent proceedings, it is the Court's opinion that its prior holding, . . . [in the temporary injunction ruling] is dispositive of all issues in the consolidated cases", except for HSA's claim of promissory estoppel against Methodist.

The court also stated: "[T]he court sees no need to prolong this litigation when it would serve no real purpose to do so."

The court therefore dismissed the count of HSA's petition based on promissory estoppel, concluding that injunctive relief was not possible under statutory law in effect prior to July 1, 1978, which bore on that count.

A. *No trial on the petitions for permanent injunction.*

The November 16 rulings deprived ISDH and HSA of a trial on the merits of their

petitions for permanent injunctions. They therefore claim error.

■ Ordinarily, an adjudication on the merits of a request for a permanent injunction should not be granted until the parties have had an opportunity to present their entire proof and arguments thereon because a decision on the merits of a request for a permanent injunction will in many cases be based on different facts and arguments than a decision on a request for a temporary injunction. *See Mesabi Iron Company,* 270 F.2d at 570; *City of Council Bluffs v. Omaha & C. B. St. R. Co.,* 9 F.2d 246, 249 (8th Cir. 1925).

In *Iowa City v. Muscatine Development Company,* 258 Iowa 1024, 141 N.W.2d 585 (1966) we stated:

The general rule is that denial of a temporary injunction, or its dissolution if granted, does not deprive plaintiff of the right to a trial on the merits of his petition seeking a permanent injunction, nor is it an adjudication against such a right. Even though temporary relief is properly denied, a permanent injunction may be granted where trial on the merits justifies such a decree.

258 Iowa at 1033, 141 N.W.2d at 591. *See Board of Education of the Kimballton Independent School District v. Board of Education of Audubon County,* 260 Iowa 840, 844–45, 151 N.W.2d 465, 468 (1967).

*Muscatine Development Company* involved a factual situation similar to the one presently before us. That case involved a request for a temporary and permanent injunction. Before testimony was offered at a hearing held three days after the filing of the petition, the court clearly limited the hearing to the plaintiff's prayer for temporary injunction, later confirmed this, and still later announced that the hearing on the permanent injunction had been set for a later date. The court, after hearing on the temporary injunction, held, "in effect, plaintiff had already tried its case or that no trial was necessary even though the case was not at issue." 258 Iowa at 1032, 141 N.W.2d at 590. We said that such a procedure was "a departure from established procedure which we cannot approve." 258 Iowa at 1032, 141 N.W.2d at 590.

■ We believe the trial court in the present case has followed the same erroneous procedure as did the trial court in *Muscatine Development Company.* We hold ISDH and HSA were entitled to a hearing or further proceedings bearing on the merits of their petitions for permanent injunction with opportunity to present their entire proof in support thereof. We reverse and remand accordingly.

B. *The other "substantive motions."*

In the various cases the motions of Doctors and Methodist for dismissal, for adjudication of law points and for summary judgment were ruled upon without opportunity for hearing. This procedure violated the agreement of the parties with the court that these motions would be heard and ruled upon after the court ruled on HSA's motion to enlarge. Because HSA was awaiting ruling on the motion to enlarge, it filed motions for extension of time to respond to the "substantive motions" of Doctors and Methodist.

As to the motion to dismiss, Iowa R.Civ.P. 117(a) provides all motions on file ten days or more shall be deemed submitted on motion day each month unless by order of court another time for submission is fixed. The parties and the trial court agreed that the motion to dismiss would not be heard on September 22, but it would come on for hearing and be considered only after the ruling of the court on the motion to enlarge and amend. The trial court then proceeded to rule on the motion to dismiss without a hearing, contrary to the agreement stated in the record.

Iowa R.Civ.P. 105, dealing with separate adjudication of law points, states in part the court must on application of either party "separately hear and determine" any point of law raised in any pleading which goes to the whole or material part of the case. Rule 105 clearly indicates a hearing should be available on such a motion, especially where as here the parties and court so agreed to a later hearing.

The promissory estoppel count of HSA's petition was excepted from consideration at the July 17 temporary injunction hearing. After the trial court ruled on its motion to enlarge, HSA was given no opportunity under this record to respond to Methodist's motion to adjudicate law points that attacked the promissory estoppel count. The court in its November 16 ruling determined the merits of the estoppel claim adversely to HSA, also without hearing.

As to the motion for summary judgment, we stated in *Estate of Campbell v. Johnson,* 253 N.W.2d 906, 908 (Iowa 1977), that Iowa R.Civ.P. 237(c) requires that summary judgment be entered only after notice and hearing on the motion. The specific language of rule 237(c) so interpreted is: "The motion shall be filed at least 10 days before the time fixed for the hearing." To the same effect as *Estate of Campbell* is *Bass v. Iowa Public Service Company,* 184 N.W.2d 691, 692 (Iowa 1971).

We conclude under this record the court committed error in ruling on the motions for dismissal, for adjudication of law points and for summary judgment without setting them for hearing after adequate notice to the parties.

We next consider in this division the third main issue involving Polk County because it is procedurally related to the second issue presented for review.

C. *The motions to dismiss Polk County's petitions of intervention.*

On November 16 the court summarily sustained the motions of Doctors and Methodist to dismiss the intervention petitions filed by Polk County in the two injunction actions filed by ISDH and HSA.

Again, the parties and court had agreed these motions would be heard and ruled on after the court ruled on HSA's motion to enlarge.

The court reasoned that since there was no merit to the injunction petitions of ISDH and HSA, then Polk County had no basis to intervene on the side of ISDH and HSA.

We have already held that ISDH and HSA are entitled to further proceedings in regard to their petitions because the denial of temporary injunctive relief was not dispositive of all issues in the cases.

Iowa R.Civ.P. 75 provides: "Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both."

While construing rule 75 we said in *Schimerowski v. Iowa Beef Packers, Inc.,* 196 N.W.2d 551, 555 (Iowa 1972), "the test of right of intervention is 'interest,' not necessity, and neither desire, advantage nor disadvantage of plaintiff or defendant is controlling."

We have given liberal construction to intervention statutes. *Edginton v. Nichols,* 242 Iowa 1091, 1093, 49 N.W.2d 555, 557 (1951). Therefore, under rule 75, if Polk County is found to have an *interest* in this litigation it should have been allowed to intervene as a *person* within the meaning of the rule, due to the fact that trial had yet to be held on the merits. Section 135.73(2), provides such an interest. It allows injunctive relief to any "political subdivision" of the state.

Polk County clearly qualifies as a political subdivision of the State of Iowa, which has access to the courts. "Each county is a body corporate for civil and political purposes, may sue and be sued . . . ." Section 332.1, The Code 1979. A county is a political subdivision of the state. *Larsen v. Pottawattamie County,* 173 N.W.2d 579, 581 (Iowa 1970); *see State ex rel. Iowa Employment Security Commission v. Des Moines County,* 260 Iowa 341, 346, 149 N.W.2d 288, 290–91 (1967).

Because we are remanding for further proceedings in all three cases, including the two in which Polk County filed petitions of intervention, and because Polk County qualifies under Rule 75, Polk County should be allowed to intervene in both actions where ISDH and HSA are plaintiffs until the cases are finally resolved.

III. *Should the motion by HSA for discovery from Methodist have been granted?* On July 25 HSA filed a request for production of documents in the possession of Methodist. On August 1 HSA filed a motion to compel discovery in the three consolidated cases. On August 24 Methodist filed a motion for a protective order in response to HSA's motion to compel discovery. In its ruling on November 16, after hearing on the motion to compel discovery, trial court held that HSA's request for production of documents was rendered moot by the other rulings and therefore denied.

Iowa R.Civ.P. 130 provides: "The Court may order the production or inspection of such books and documents as, in its discretion, it deems material to a just determination of the cause, and on any terms or conditions it deems suitable to protect the documents, their owner, or any other person."

■ It is clear from the ruling that the motion to compel discovery was never considered on its merits. In light of divisions I and II above, trial court must reconsider on remand the motion for discovery in these three cases. We reverse as to this ruling on the motion of HSA. We make no intimation as to our view of the merits of the request.

■ Reconsideration and ruling on the motions relative to discovery should take place before hearing on the motion for summary judgment. *Carter v. Jernigan,* 227 N.W.2d 131, 135 (Iowa 1975).

We have considered all of the many contentions of the parties whether specifically discussed or not.

In summary, we conclude as follows:

1. The ruling denying the petitions by ISDH and HSA for temporary injunction is affirmed.

2. The ruling denying HSA's request to compel discovery is reversed and shall be reconsidered by the trial court on remand along with HSA's motion to compel discovery and the motion for protective order by Methodist and Doctors.

3. The rulings sustaining the motions by Methodist and Doctors for dismissal, for adjudication of law points and for summary judgment are reversed. The cases are remanded and these motions shall be set for hearing with proper notice to the parties and appropriate ruling shall then be made on the motions.

4. The rulings sustaining the motions by Methodist and Doctors to dismiss the petitions of intervention by Polk County are reversed and on remand an order should be entered overruling the motions.

5. The cases are remanded for further proceedings consistent with this opinion.

6. Costs are taxed one-half against ISDH and HSA and one-half against Methodist and Doctors.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.